[L.A. No. 30356. In Bank. Feb. 28, 1975.]

ROSSMOOR SANITATION, INC., Plaintiff and Respondent, v.
PYLON, INC., Defendant and Appellant;
UNITED STATES FIRE INSURANCE COMPANY, Defendant,
Cross-complainant and Appellant;
INSURANCE COMPANY OF NORTH AMERICA, Cross-defendant
and Respondent.

**COUNSEL**

Jarrett, Woodhead & Brandt, Frank W. Woodhead and Ellis J. Horvitz for Defendant and Appellant and for Defendant, Cross-complainant and Appellant.

W. Mike McCray for Plaintiff and Respondent and for Cross-defendant and Respondent.

**OPINION**

**MOSK, J.**—Pylon, Inc., (Pylon) and its insurance carrier, United States Fire Insurance Company (U.S. Fire), appeal from a judgment indemnifying Rossmoor Sanitation, Inc., (Rossmoor) for certain sums expended in satisfying a prior tort judgment, and finding Rossmoor's carrier, Insurance Company of North America (INA), not liable under an insurance policy. Appellants contend that Rossmoor was actively negligent as a matter of law, thus barring its recovery under an indemnity provision of a contract, and that INA should be liable for a portion of the loss. In addition they urge that the active-passive negligence test used in indemnification cases be modified. We conclude that the judgment was correct and should be affirmed.

Rossmoor employed Pylon to construct a sewage pump station and certain sewer lines at a cost of $88,000. The station was to be constructed in conformity with plans prepared by an engineering firm which Rossmoor retained. In the employment contract Pylon agreed to

indemnify Rossmoor against all claims for damages arising out of the work and for attorney's fees and costs which might be incurred in the event of a damage suit. Pylon also agreed to obtain insurance for itself and to name Rossmoor in the policy as an additional insured.[1]

Pylon named Rossmoor as an additional insured under a policy issued by U.S. Fire. Rossmoor also had independent coverage under a policy previously issued by its own insurer, INA. Both policies contain "other insurance" clauses; each such clause states that an apportionment shall be made if the insured has other insurance against a loss covered by the policy.[2]

---

[1]The employment contract provides in part: "SECTION 6—LEGAL RELATIONS AND RESPONSIBILITY. . . . G. RESPONSIBILITY FOR DAMAGES: The Owner [Rossmoor], the Engineer, or their authorized assistants shall not be answerable or accountable in any manner for any loss or damage that may happen to the work or any part thereof, or for any material or equipment used in performing the work, or for injury or damage to any person or persons, either workmen or the public, or for damage to adjoining property from any cause whatsoever during the progress of the work, or any time before final acceptance of the work.

"Contractor [Pylon] shall indemnify and save Owner, the Engineer or other authorized assistants harmless against all claims for damages to persons or property arising out of Contractor's execution of the work covered by this contract and any and all costs, expenses, attorney's fees and liability incurred by Owner, the Engineer or said assistants, in defending against such claims, whether the same proceed to judgment or not and Contractor at his own expense agrees upon written request by Owner, to defend any such suit or action brought against Owner, said Engineer or assistants. In the prosecution of any successful claim or suit by Owner for the enforcement of this Contract, or any of the monetary or other obligations of Contractor hereunder, Contractor agrees to pay to Owner any reasonable attorney's fees and any costs of suit incurred by Owner.

"K. CONTRACTOR'S INSURANCE: The Contractor shall not commence work under this Contract until he has obtained all insurance required hereunder in a company or companies acceptable to the Owner, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all insurance required of the subcontractor has been obtained. The Contractor shall take out and maintain at all times during the life of this Contract the following policies of insurance:

"(2) Public liability and property damage; on account of bodily injuries including death resulting therefrom, in the sum of not less than Five Hundred Thousand Dollars ($500,000.00) for one person and One Million Dollars ($1,000,000.00) for more than one person, and property damage in the sum of One Million Dollars ($1,000,000.00) resulting from any one accident which may arise from the operations of the Contractor in performing the work provided for herein.

"Each of the policies of insurance provided for in subparagraphs (1), (2) and (3) shall name Owner as an additional assured."

[2]The policies provide: "Other Insurance. If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater portion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all valid and collectible insurance against such loss; . . ." The limit of the U.S. Fire policy is $500,000 per person. The limit of the INA policy is $1,000,000 per person.

According to the construction plan, two parallel trenches were to be dug for the installation of sewer pipes. The day before the accident the first trench was excavated, a pipe was installed, and the trench was filled and compacted. The second trench was dug on the morning of the accident 18 inches from the original excavation. Two Pylon employees, Widman and Cagigas, entered the trench to work. Although shoring material was available, they proceeded into the trench without shoring it because doing so was easier and faster than waiting for supports to be put in place. A cave-in occurred, killing Cagigas and injuring Widman. In a tort action against Rossmoor prior to the case at bar, Widman and Cagigas' heirs recovered a judgment of approximately $267,000 after certain setoffs. The judgment, legal expenses, and court costs were satisfied by Rossmoor through its insurance carrier, INA.[3]

Rossmoor then brought this declaratory action against both Pylon and U.S. Fire, seeking indemnity for the sums thus paid. U.S. Fire cross-complained against INA, seeking an apportionment of the sums between the carriers pursuant to the "other insurance" clauses. The case was tried before the same judge who had presided in the original tort suit, and transcripts from the prior action, the construction contract, and the applicable policies were admitted in evidence.

After reviewing the record, the court reasoned that inasmuch as the U.S. Fire policy was part of the consideration for the job, it provided primary coverage to Rossmoor; that the INA policy was merely excess; and that neither Pylon nor U.S. Fire was entitled to any benefits or setoffs by reason of the INA coverage. It further declared that the indemnity agreement was sufficiently explicit to cover the accident, and found that any negligence by Rossmoor in the events that led to the cave-in was merely of a "passive" nature, i.e., in failing to discover that Pylon employees intended to enter an unshored trench. The court was also of the opinion that both INA and U.S. Fire were subrogated to the rights of their respective insureds, implying INA could benefit from Rossmoor's indemnity agreement. As a result, judgment was rendered in favor of Rossmoor and INA. Pylon and U.S. Fire now appeal.

Count I of Rossmoor's complaint seeking indemnification is based on the indemnity agreement with Pylon. Count II is based on the insurance policies. Rossmoor contends that because of the indemnity agreement and the U.S. Fire insurance policy Pylon is obligated to pay the entire

[3]See *Widman v. Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734 [97 Cal.Rptr. 52], for a complete recitation of the events leading to the accident and a discussion of the basis of Rossmoor's liability.

damage judgment through its insurer, U.S. Fire. Appellants, on the other hand, contend that Rossmoor was actively negligent as a matter of law in the events that led to the cave-in and thus is barred from recovery under the indemnity agreement. They urge that liability be apportioned between U.S. Fire and INA. We proceed first to an examination of the indemnity agreement and then to a discussion of the liability of the two insurance companies.

## I

Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. (*Sammer* v. *Ball* (1970) 12 Cal.App.3d 607, 610 [91 Cal.Rptr. 121].) This obligation may be expressly provided for by contract (e.g., *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 961 [59 Cal.Rptr. 809, 429 P.2d 129]), it may be implied from a contract not specifically mentioning indemnity (see *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 375-379 [25 Cal.Rptr. 301]), or it may arise from the equities of particular circumstances (*S.F. Examiner Division* v. *Sweat* (1967) 248 Cal.App.2d 493, 497 [56 Cal.Rptr. 711]; see Note, *Contribution and Indemnity in California* (1969) 57 Cal.L.Rev. 490, 492-493). Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. (*Markley* v. *Beagle, supra,* at p. 961.)

Past cases have held that an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. (*Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377].) If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a "general" indemnity clause. (See *Markley* v. *Beagle, supra,* at p. 962; *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 624 [100 Cal.Rptr. 1, 493 P.2d 465].) While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. (*Markley* v. *Beagle, supra,* at p. 962; *Morgan* v. *Stubblefield, supra,* at p. 624; see also *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656, 661 [93 Cal.Rptr. 376].)

Provisions purporting to hold an owner harmless "in any suit at law" (*Markley* v. *Beagle, supra,* at p. 961), "from all claims for damages to

persons" (*Morgan* v. *Stubblefield, supra,* at p. 626), and "from any cause whatsoever" (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 422-423 [105 Cal.Rptr. 725]), without expressly mentioning an indemnitee's negligence, have been deemed to be "general" clauses.

■ In the case at bar there is an express contractual agreement requiring Pylon to indemnify Rossmoor against "all claims for damages" arising out of Pylon's work; Rossmoor is not to be held accountable "for any loss . . . or for injury to any person . . . ." Since the agreement does not state what effect Rossmoor's negligence will have on Pylon's obligation to indemnify, the clause is a "general" indemnity provision, and under existing case law Rossmoor may not benefit from the agreement if it is deemed actively negligent as Pylon and U.S. Fire claim. The trial court has found, however, that Rossmoor was at most passively negligent. We are not persuaded that this determination was erroneous.

■ Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. (*Markley* v. *Beagle, supra,* at p. 962; *Morgan* v. *Stubblefield, supra,* at pp. 624-625; see also *Cahill Bros., Inc.* v. *Clementina Co., supra,* at p. 382.) Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. (See *Morgan* v. *Stubblefield, supra,* at p. 625, and *Cahill Bros., Inc.* v. *Clementina Co., supra,* at p. 382.) ■ "The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law." (*Morgan* v. *Stubblefield, supra,* at p. 625.)

Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact; active negligence may be determined as a matter of law, however, when the evidence is so clear and undisputed that reasonable persons could not disagree. (See *Morgan* v. *Stubblefield, supra,* at pp. 625, 627; *Cahill Brothers, Inc.* v. *Clementina Co., supra,* at pp. 382-383; see also *Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 275 [78 Cal.Rptr. 279].)

Passive negligence has been found or assumed from the failure to discover a defective condition created by others (*Markley* v. *Beagle, supra,* at pp. 955-956, 962), failure to exercise a right to inspect certain work and specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]). Active negligence has been found in digging a hole which later caused an injury (*Morgan* v. *Stubblefield, supra,* at pp. 626-627), knowingly supplying a scaffold which did not meet the requirements of a safety order (*id.* at pp. 625-626), creating a perilous condition that resulted in an explosion (*Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra,* at p. 661), and failing to install safety nets in violation of a contract (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* at pp. 424-425).

■ In support of their contention that Rossmoor was actively negligent as a matter of law, Pylon and U.S. Fire rely on evidence that the two trenches were excavated in accordance with plans and specifications furnished to Pylon by Rossmoor; that the plans were prepared by an engineering firm retained by Rossmoor; that Rossmoor approved the plans; that Rossmoor and the engineering firm had numerous supervisory personnel on the job site at various stages of construction to interpret the plans and to direct Pylon's work; that Rossmoor's supervisors and engineers knew of, permitted, and approved the excavation of the trench; that the excavation of two parallel trenches 18 inches apart was extremely hazardous and not consistent with good construction practice; that lateral pressure from the first trench was the primary reason for the collapse of the 18-inch partition into the second trench; that it would have been safer to dig one wide trench rather than two parallel trenches; that Rossmoor had experienced considerable difficulty with land slippage and excavation collapse during construction; that Rossmoor never requested a compaction report on the first trench; that in the area Rossmoor was conducting dynamiting operations which caused the ground to shake; that trucks and heavy equipment also caused vibrations; and that Rossmoor was worried about delays in construction. From this evidence, appellants submit, Rossmoor must be adjudged guilty of active negligence as a matter of law.

We believe, however, that the trier of fact could reasonably conclude from all the evidence that at the time of the accident Rossmoor had no supervisory personnel at the site of the accident and had no knowledge that Pylon employees intended to enter the unshored trench; that Pylon

alone, through its employees, knew that Widman and Cagigas intended to enter the unshored trench; and that Pylon was directly responsible for the trench remaining unshored. It is also a reasonable conclusion that the cave-in occurred not because of defective plans or earth vibrations, but simply because the trench was unshored. The facts of the case at bar are thus not so clear as those of *Morgan* v. *Stubblefield, supra,* at page 627, in which the conclusion was "inescapable" that an indemnitee committed affirmative acts of negligence causing an injury and was guilty of active negligence as a matter of law. In view of the factual conflict, it is appropriate to defer to the determination of the trier of fact: that Rossmoor was at most passively negligent.

Pylon and U.S. Fire submit nevertheless that we should overrule our decisions allowing passively negligent indemnitees to recover under general indemnity clauses; they argue that the concept of active and passive negligence is vague (*Pearson Ford Co.* v. *Ford Motor Co.* (1969) *supra,* at p. 272; *Ford Motor Co.* v. *Robert J. Poeschl, Inc.* (1971) 21 Cal.App.3d 694, 696 [98 Cal.Rptr. 702]), and that Rossmoor should not be entitled to indemnification under the agreement if its negligent conduct was a proximate cause of the accident. We are urged to adopt a rule by which the right to express indemnity under a general indemnity clause would exist only when the indemnitee's negligence is derivative in nature, such as under the doctrine of *respondeat superior.*[4] We reject this approach.

In *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411 [340 P.2d 604], we dealt with an indemnity clause under which a contractor performing certain excavation work "release[d] and agree[d] to indemnify and save Railroad harmless from and against any and all injuries to and deaths of persons, claims, demands, costs, loss, damage and liability, howsoever same may be caused, resulting directly or indirectly from the performance of any or all work . . . ." (52 Cal.2d at p. 414.) The agreement was prepared by the railroad and the question presented was whether the indemnity clause operated to exculpate the railroad from the consequences of its own negligence—the switching of a string of railroad cars into the excavation while operating the railroad system. We held that the language of the clause fell short of expressing such an intention, and cited with approval the rule that "where the parties fail to refer

---

[4]Appellants argue that this position finds some support in *Builders Supply Co.* v. *McCabe* (1951) 366 Pa. 322, 325-326 [77 A.2d 368, 24 A.L.R.2d 319], and in California Court of Appeal cases which have relied on *McCabe*. (See *Ford Motor Co.* v. *Robert J. Poeschl, Inc., supra,* at pp. 696-697, and fn. 1.) *McCabe* affirmed the rule that no right of indemnity exists in the case of joint tortfeasors having no legal relation to one another, each of them having the same duty to the injured party. The case did not involve contractual interpretation.

expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts." (Fn. omitted.) (Note, 175 A.L.R. 8, 30.) We stated that "Courts have consistently adopted the position that indemnification clauses are to be strictly construed against the indemnitee in cases involving affirmative acts of negligence on [the indemnitee's] part." (52 Cal.2d at p. 415.) In conclusion we declared that "if an indemnitor . . . is to be made responsible for the negligent acts of an indemnitee over whose conduct it has no control, the language imposing such liability should do so expressly and unequivocally so that the contracting party is advised in definite terms of the liability to which it is exposed. The indemnification clause in the present case, by not expressly stating that the defendant was protected against acts of its own negligence, failed to meet this requirement." (*Id.* at pp. 416-417.)

Subsequent cases have followed this approach and restated the principle in somewhat varying terms. Thus it has been said that while "An indemnity clause phrased in general terms will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts," mere nonfeasance or passive negligence "will not preclude indemnity under a general clause . . . ." (*Markley* v. *Beagle, supra,* at p. 962.)

Appellants contend that attempts to classify conduct as either "active" or "passive" are often difficult, and that on occasions the distinction between the types of negligence can be criticized as serving only to "muddy already troubled waters" in contractual indemnity situations. (Conley & Sayre, *Indemnity Revisited: Insurance of the Shifting Risk* (1971) 22 Hastings L.J. 1201, 1207.) Appellants insist that under the active-passive approach an analysis to determine whether a particular set of circumstances warrants indemnification pursuant to an agreement is evaded in favor of an inflexible rule of construction which may not reflect the intent of the parties, which ignores the language of the agreement, and which focuses instead on an illusory distinction between "active" or "passive" negligence. They urge that indemnity should not depend on mere labels. (See, e.g., *Dole* v. *Dow Chemical Company* (1972) 30 N.Y.2d 143 [331 N.Y.S.2d 382, 282 N.E.2d 288, 53 A.L.R.3d 175].)

In actuality, however, we do not employ the active-passive dichotomy as wholly dispositive of this or any other case. We are ever mindful of the pragmatic approach taken by this court in *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]. There we viewed the issue as whether the indemnity clause in question

operated to exculpate Harvey from the consequences of its own alleged breach of duty: "The question is one of interpretation of contracts. If it can be determined that the parties intended by their agreement to protect the indemnitee against claims of damage by any or even all types of negligent conduct on its part, such an agreement would effectively accomplish that purpose." (*Id.* at p. 447.)

The opinion in *Harvey,* while distinguishing *Vinnell,* pointed out that throughout *Vinnell* "it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where, as in the present case, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself." (*Id.* at p. 449.)

Thus, while adhering to the underlying distinction between active and passive negligence which has long been accepted by the bench, the bar, and the insurance industry, we hold that, as declared in *Harvey,* the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts.

Under the indemnity agreement in the present case, Rossmoor is not to be held accountable for any loss or injury to any person occurring during construction undertaken by Pylon, and Pylon has agreed to indemnify Rossmoor for all claims arising out of its execution of the work. It is a reasonable and practical conclusion that the parties bargained for the protection here at issue, given the language of the contract and the facts, as found by the trial court, that the accident resulted from Pylon's inadequate execution of the work, not from any active negligence by Rossmoor. Since the accident may be seen as one of the risks against which Rossmoor sought to be covered, Rossmoor is entitled to the protection it seeks under the agreement.

## II

■ Generally, an insurer on paying a loss is subrogated in a corresponding amount to the insured's right of action against any person responsible for the loss. (6A Appleman, Insurance Law and Practice

(1942) § 4051, p. 103.) California law is in accord that insurance companies may be subrogated to the rights of their insureds. (*Offer* v. *Superior Court* (1924) 194 Cal. 114, 118 [228 P. 11].) An example of this principle is found in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]. In that case we held that if a judgment has been rendered against an employer for damages occasioned by unauthorized negligent acts of an employee, the employer may recoup his loss in an action against the negligent employee. We also noted that under the principles of subrogation the insurer of the employer which paid the judgment may recover against the negligent employee or against the employee's insurer. ██ It would appear, therefore, that the trial court could properly find that INA was subrogated to Rossmoor's right of indemnification since INA paid the Widman-Cagigas tort judgment for Rossmoor and since Rossmoor has a right of indemnity against Pylon.

Pylon and U.S. Fire, however, cite language in *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 153 [57 Cal.Rptr. 240], for the proposition that the terms of the insurance contracts requiring proration in case of other insurance should control, rather than the right to indemnification that exists between the parties insured by the contracts. Under the circumstances of the present case, we cannot agree. However correct the *Universal* rule may be when applied in tort suits arising out of automobile accidents, we do not find it to be controlling authority here. The case at bar concerns a contractual indemnity agreement, not theoretical noncontractual rights of indemnification between insureds. Cases following *Universal* are thus distinguishable.

It appears that both INA and U.S. Fire calculated and accepted premiums with knowledge that they might be called upon to satisfy a full judgment. There is no evidence that either company knew there was or would be other insurance when they issued the policies. The fact that there is other insurance is a mere fortuitous circumstance. We view one factor as compelling, however: to apportion the loss in this case pursuant to the other insurance clauses would effectively negate the indemnity agreement and impose liability on INA when Rossmoor bargained with Pylon to avoid that very result as part of the consideration for the construction agreement. We therefore conclude that the rights of indemnity and subrogation must control, and are persuaded the trial court was correct in finding that because the U.S. Fire policy was part of the consideration for the construction job, it must be viewed as primary

insurance under the facts of this case and that INA was subrogated to the rights of Rossmoor.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.