[Civ. No. 48212. Second Dist., Div. Three. Jan. 26, 1977.]

MARATHON STEEL COMPANY,
Cross-complainant and Appellant, v.
TILLEY STEEL, INC., Cross-defendant and Respondent.

414

COUNSEL

Haight, Lyon, Smith & Dickson and Roy G. Weatherup for Cross-complainant and Appellant.

Stockdale, Peckham, Estes, Ramsey, Lawler & Iorillo and Clinton M. Hodges for Cross-defendant and Respondent.

OPINION

COBEY, Acting P. J.—Marathon Steel Company appeals from a summary judgment granted on motion to Tilley Steel, Inc. in Marathon's cross-action against Tilley for contractual and equitable indemnification.[1] Tilley's motion was granted on the statutory grounds that Marathon's cross-action had no merit and that there were no triable issues as to material fact. (Code Civ. Proc., § 437c.) The appeal lies. (Code Civ. Proc., § 437c.)

Malcolm Meyers, an employee of Tilley, was seriously injured on October 13, 1971, while working on a freeway construction site. The general contractor on the job was the Griffith Co., which had subcon-

---

[1]On appeal Marathon has apparently abandoned its claim against Tilley for equitable indemnification. In any event, recovery on such a claim would appear to be foreclosed by Labor Code section 3864. (See *E. B. Wills Co.* v. *Superior Court,* 56 Cal.App.3d 650, 653-654 [128 Cal.Rptr. 541]; *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.,* 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].)

tracted some of the steel and iron work to Marathon,[2] which in turn had subcontracted the installation part of its work to Tilley. Marathon never had any employees on the job site. Meyers sued the State of California and Griffith, Griffith cross-complained for indemnification against Marathon and Marathon did likewise against Tilley.

■ (See fn. 4.) The summary judgment under appeal was apparently granted on the basis that under the indemnification provision at issue[3] Tilley was liable to Marathon only for damage or loss caused Marathon *solely* by Tilley's negligence and if such damage or loss was caused *concurrently* by even passive negligence on Marathon's part, Marathon could not recover from Tilley under this type of indemnification provision. This argument is obviously based upon the interpretation of this type of indemnification provision found in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.,* 29 Cal.App.3d 413, 420-421 [105 Cal.Rptr. 725].[4] **(3)** According to Tilley, since Marathon's need for indemnification under this provision can arise only if Meyer's injuries were in some way proximately caused by Marathon's negligence, at least in part, Marathon cannot *possibly* recover, as a matter of law, from Tilley under this provision. This being so, the summary judgment for Tilley was proper.

We disagree. As pointed out by Justice Sims in *Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.,* 61 Cal.App.3d 237, 248 [132 Cal.Rptr.

---

[2]Marathon was then known as Allison Steel Manufacturing Company.

[3]This provision reads: "Subcontractor shall indemnify and hold harmless Contractor and General Contractor against loss, damage, claims, demands, costs (including attorney fees and other expenses of suit) of any kind whatsoever resulting from acts or omissions of Subcontractor, *its employees, agents or invitees in any way connected with* Subcontractor's performance under any Subcontract Work Order including, but not limited to the following: (a) Injury or harm (including death) to persons or property; (b) Infrigement [*sic*], alleged infringement, or use of patent rights; (c) Faulty material, equipment or workmanship; (d) Nonpayment of taxes or license fees; (e) Breach of any provision of this Agreement or of any Subcontract Work Order."

[4]This restrictive interpretation of this type of indemnification agreement was ignored by our Supreme Court in *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d at page 629.
The construction of indemnity contracts in the building trade field and insurance indemnity contracts generally differ. Insurance indemnity contracts are uniformly construed against the insurer. (*Continental Cas. Co.* v. *Phoenix Const. Co.,* 46 Cal.2d 423, 430 [296 P.2d 801, 57 A.L.R.2d 914].) Indemnity contracts, on the other hand, appear to be construed against the indemnitee rather than the indemnitor. (See, e.g., *Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411, 415-417 [340 P.2d 604]; *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.,* 29 Cal.App.3d 413, 419-420 [105 Cal.Rptr. 725].)

86], this interpretation of this type of indemnification provision renders it largely illusory. Ordinarily a contract should receive an interpretation that, among other things, renders it *reasonable* and capable of being put into effect. (Civ. Code, § 1643.) After all, the purpose of an indemnification provision is to indemnify.

Furthermore, the same court which decided *MacDonald* subsequently pointed out in *Western Contracting Corp.* v. *Southwest Steel Rolling Mills, Inc.,* 58 Cal.App.3d 532, 541-542 [129 Cal.Rptr. 782], that an employer of an independent contractor, such as Marathon, can be vicariously liable in appropriate circumstances for torts of an independent contractor, such as Tilley, and that such vicarious liability may be indemnified under the type of indemnity provision before us.

We doubt that, correctly analyzed, all of such vicarious liability is entirely derivative and nonpersonal in nature, but the present state of the law is that much of such vicarious liability is so regarded. (See Prosser on Torts (4th ed: 1971) pp. 468 et seq.; Rest.2d Torts (1965) §§ 415-429.)[5]

In any event, the summary judgment under appeal was granted without the trial court being first informed in any way as to how Meyers was injured. Without knowing whose negligence, if any, proximately caused Meyers' injuries, it is *impossible* to say, as a matter of law, whether Marathon may be entitled to indemnification from Tilley for Marathon's liability for Meyers' injuries under the indemnification provision before us. In other words, triable issues as to the material facts regarding the exact causation of Meyers' injuries clearly remain and, therefore, summary judgment should not have been granted to Tilley.

[5]The principal categories where such "vicarious" liability of an employer for the negligence of his independent contractor are found are (1) nondelegable duties and (2) inherently dangerous work. (See, e.g., *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]; Rest.2d Torts (1965) *supra,* § 409, com. b, p. 371; Comment *Liability for the Torts of Independent Contractors in California* (1956) 44 Cal.L.Rev. 762; see *Dalton* v. *Angus & Co.* (1881) 6 App.Ca. 740, 829.) Although cases of liability because of "inherently dangerous work" are often catalogued separately (e.g., Prosser, *supra,* § 71 at 470-474) the effect of inherently dangerous work is to raise a nondelegable duty. (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d at p. 254.) Thus, the "inherently dangerous" class is merely a subset of the larger class of "nondelegable duties." In short, vicarious liability in this area is probably a misnomer. (See Shearman & Redfield, Law of Negligence (rev. ed. 1941) § 175, p. 411; Chapman, *Liability for the Negligence of Independent Contractors* (1934) 50 L.Q.Rev. 71, 75, 77; Jolowicz, *Liability for Independent Contractors in the English Common Law—A Suggestion* (1957) 9 Stan.L.Rev. 690, 708-709; Brooks, *Tort Liability of Owners & Independent Contractors for On-The-Job Injuries to Workmen* (1965) 13 UCLA L.Rev. 99, 101.)

(Code Civ. Proc., § 437c; *Robinson* v. *City and County of San Francisco,* 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125].)

The summary judgment is reversed.

Allport, J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 24, 1977.