[No. A033560. First Dist., Div. One. July 24, 1987.]

MORTON THIOKOL, INC., Cross-complainant and Appellant, v.
METAL BUILDING ALTERATION COMPANY, Cross-defendant
and Respondent.

**COUNSEL**

Kevin J. Dunne, Nicholas W. Heldt and Sedgwick, Detert, Moran & Arnold for Cross-complainant and Appellant.

Paul J. Herlihy, Gordon E. Hepler and Ramos, Herlihy, Broadbeck, Hepler & Cockle for Cross-defendant and Respondent.

**OPINION**

**NEWSOM, J.**— ██ The question presented by this appeal is whether appellant Morton Thiokol is entitled to contractual indemnity from respon-

dent Metal Building Alteration Company, despite the jury's finding that appellant was actively negligent.

The relevant facts may be summarized as follows.

In 1982, Metal Building Alteration Company (hereafter Metal Building or respondent) contracted with appellant to install a new roof at appellant's salt refinery. In the contract, Metal Building agreed that it had "visited the site and fully" understood "the working conditions and material handling requirements . . . ." The contract contained 21 conditions, one of which provided, in part, that "[t]he Contractor shall supervise and direct the work using his best skill and attention . . ." and number 5(a) ". . . *will take all necessary precautions during the progress of the work to protect all persons and the property of others from injury or damages.*" (Italics added.) Condition number 5(b), entitled "INDEMNITY" required that Metal Building ". . . *agrees to indemnify and hold harmless the Owner and its agents and employees from any and all liability, loss, damage, cost and expense (including attorney's fees) sustained by reason of Contractor's breach of warranty, breach of contract, misrepresentation or false certification, or failure to exercise due care.* All indemnifications shall be continuing." (Italics added.)

Metal Building thereafter subcontracted the entire job to North Coast Steel. Work on the roof commenced in the beginning of August 1982. Metal Building sent a representative to appellant's factory on the first day of construction work to ensure that the work had begun.

On August 19, 1982, Richard Sklarski, an employee of North Coast Steel, was working on the roof without any safety equipment. He slipped and slid off the roof, sustaining serious injuries.

At trial it was uncontradicted that appellant's roof was extremely steep and that safety precautions were indispensable. For example, Harold Tippett, Sklarski's construction expert, testified that safety lines, scaffolding and guard rails were the minimum necessary safety equipment required by industry standards, and that salt made the roof so slippery that a man could not have stood upright on it. Another expert, Dennis Fairley, performed coefficient friction tests on the roofing material with and without salt, and testified that the presence of salt on the roof made it impossible for a man to safely stand up. Industry standards required the use of safety equipment irrespective of the presence of salt, and in any event would have prevented the accident.

Mr. Soso, the president of Metal Building, inspected appellant's plant, submitted the roofing bid and ultimately signed the roofing contract. He

testified that appellant's representative never discussed the safety provisions of the contract with him, but admitted that he had read the contract prior to signing it. Observing salt throughout the premises, Soso presumed that it was abundantly present on the roof as well; he recognized that the steepness of the roof would require extra safety precautions including the use of safety belts, lines and scaffolding. However, he never advised the subcontractor to take such precautions, nor did he check to see whether they had been taken.

Appellant's primary contention is that the trial court erred in denying its claim for contractual indemnity from Metal Building.

Our state Supreme Court has discussed indemnity in the following terms. Generally speaking, it is "the obligation resting on one party to make good a loss or damage another party has incurred." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].) The "obligation may be expressly provided for by contract . . . . Where . . . the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. [Citation.] [¶] Past cases have held that an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. [Citation.] If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. [Citations.] While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. [Citations.]" (*Ibid.*, italics in original.)

 The trial court found the contractual provision at issue to be a "general" indemnity agreement, and, based upon the jury's verdict that appellant was "actively" negligent, denied its claim for indemnity.

As indicated in the above-quoted language of our high court in *Rossmoor, supra,* it has been the general rule that a party will not be indemnified for its own active negligence under a general indemnity agreement. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 507 [146 Cal.Rptr. 614, 579 P.2d 505]; *Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 810 [144 Cal.Rptr. 408, 575 P.2d 1190]; *Ralph M. Parsons Co.* v. *Combustion Equipment Associates, Inc.* (1985) 172 Cal.App.3d 211, 220 [218 Cal.Rptr. 170]; *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 59 [200 Cal.Rptr. 136].) The same high court decision, however, rejects the mechanical application of that rule, as follows: ". . . whether an indemnity agreement covers a given case turns primarily

on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d at p. 633.)

Decisions by the Courts of Appeal predating *Rossmoor* employed the same pragmatic approach. In *Atchison, T. & S. F. Ry. Co.* v. *James Stewart Co.* (1966) 246 Cal.App.2d 821 [55 Cal.Rptr. 316], Stewart argued that the failure of the indemnity clause to expressly include cases involving the railway's own negligence—a concurrent cause of the accident—defeated the railway's claim for imdemnity. The court rejected this claim and stated: "From these recent expressions of the Supreme Court we learn this: *Harvey* teaches that the express negligence doctrine mentioned in *Vinnell* will not always be applied. The clearly expressed intention of the parties will be enforced." (*Atchison, T. & S. F. Ry. Co.* v. *James Stewart Co., supra,* 246 Cal.App.2d 821, 830.) "Considering the text of the writing and the relationship of the parties, no one could doubt that the accident which occurred was exactly the kind of hazard which was contemplated by the parties, and against which the railway was promised protection." (*Id.* at p. 826; accord *Indenco, Inc.* v. *Evans* (1962) 201 Cal.App.2d 369, 376 [20 Cal.Rptr. 90]; *County of L.A.* v. *Cox Bros. Constr. Co.* (1961) 195 Cal.App.2d 836, 842 [16 Cal.Rptr. 250].)

We agree with the proposition that indemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained would not have occurred without the indemnitor's negligence.

Metal Building argues that because the presence of salt made the roof more dangerous, the active negligence exception should apply. No convincing rationale is offered in support of this assertion. The precautions which, had they been taken, would have obviated the danger of Sklarski's falling, were bargained for and intended by the parties. Indeed, appellant engaged an expert who could reasonably be presumed to know the dangers presented by a steep roof upon which salt would inevitably be present. And as the record demonstrates, Metal Building's president inspected the roof before signing the contract, and must have been aware of the precise hazards at issue as well as the necessity of safeguarding against them. Under such circumstances, we discern no unfairness in enforcing contractual indemnity.

Metal Building argues that it is excused from its obligation to take necessary safety precautions because appellant's representative never expressly

and specifically raised or discussed them. ■ But it is well settled that "[a] contract is a result of the objective manifestations of the parties and if these are sufficient, the subjective intentions or beliefs of the parties are immaterial. [Citation.]" (*Estate of Klauenberg* (1973) 32 Cal.App.3d 1067, 1070-1071 [108 Cal.Rptr. 669]; see also *Windsor Mills, Inc.* v. *Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 992 [101 Cal.Rptr. 347].) ■ Its representative having concededly read the entire contract, Metal Building must be deemed to have objectively assented to the contractual safety provisions.[1]

For all of these reasons we have concluded that denying indemnity here would deprive the indemnitee of the benefit of its bargain and read out of the contract essential provisions intended by the parties to govern their relationship, in violation of the principle that contracts should be read in a manner which renders them reasonable and capable of being put into effect.[2] (Civ. Code, § 1643.) (*Marathon Steel Co.* v. *Tilley Steel, Inc.* (1977) 66 Cal.App.3d 413, 417 [136 Cal.Rptr. 73]; see also *Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177, 188 [129 Cal.Rptr. 723]; *Advance Medical Diagnostic Laboratories* v. *County of Los Angeles* (1976) 58 Cal.App.3d 263, 269-270 [129 Cal.Rptr. 723].) In so concluding we are faithful to our high court's admonition in *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d 622 that the active-passive rubric ought not to be wholly dispositive, but that instead the enforceability of an indemnity agreement shall primarily turn upon a reasonable interpretation of the intent of the parties. (*Id.* at p. 633.) Where, as here, the agreement clearly indicates that one party was to be indemnified for any damages sustained as a result of another's breach of the contract, and it is undisputed that the accident would never have happened except for such breach, we conclude that the indemnity is viable notwithstanding the jury's finding of the indemnitee's "active" negligence.[3]

---

[1] Metal Building also argues that it was excused from taking the safety precautions mandated in the contract because appellant had accepted a comparable performance on a prior contract. In order to make this assertion, Metal Building was required to demonstrate that the conditions of the project and the manner of performance of each contract were the same. Testimony at trial instead indicated that the roof involved in the prior contract was lower and essentially flat, whereas the subject roof was higher and steeply pitched. Even if there was evidence that the prior contract had been performed in an unsafe manner, respondent observes that "waiver of one breach does not preclude the offended party from invoking his contract rights upon a later breach." (*Call* v. *Alcan Pacific Co.* (1967) 251 Cal.App.2d 442, 448 [59 Cal.Rptr. 763]; fn. deleted.)

[2] "Indemnity agreements, like other contracts, must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, . . ." (*Indenco, Inc.* v. *Evans, supra,* 201 Cal.App.2d 369, 374; accord *Ralph M. Parsons Co.* v. *Combustion Equipment Associates, Inc., supra,* 172 Cal.App.3d 211, 221.)

[3] In so holding, we disagree with contrary decisions which rely exclusively on the active/passive distinction in determining whether a party is entitled to be indemnified.

The judgment is reversed. Costs to appellant.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied August 21, 1987, and respondent's petition for review by the Supreme Court was denied October 14, 1987.