Filed 2/27/13  Solares v. Consolidated Disposal Service CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| GREGORIO SOLARES,<br><br>        Plaintiff,<br><br>  v.<br><br>CONSOLIDATED DISPOSAL SERVICE, LLC,<br><br>        Defendant. | B237713<br><br>(Los Angeles County<br>Super. Ct. No. BC395929) |
| CONSOLIDATED DISPOSAL SERVICE, LLC,<br><br>        Cross-complainant and Appellant,<br><br>  v.<br><br>ASPEN DISTRIBUTION I, INC.,<br><br>        Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kenneth Freeman, Judge.  Affirmed.

Neil, Dymott, Frank, McFall & Trexler, Hugh A. McCabe and David P. Hall for Cross-complainant and Appellant.

Early Maslach & O'Shea, John Peterson, James Grafton Randall; Law Office of Priscilla Slocum and Priscilla Slocum for Cross-defendant and Respondent.

_____

Consolidated Disposal Service, LLC (Consolidated), appeals from the judgment entered against it on its cross-complaint for indemnity against Aspen Distribution I, Inc. (Aspen) the indemnity claim was based on an underlying product liability action by an Aspen employee who was injured while filling a refuse container that Consolidated had leased to Aspen. We affirm the judgment because there was no evidence that the accident was caused even in part by Aspen's negligence.

## FACTS AND PROCEDURAL HISTORY

On August 6, 2008, Gregorio Solares sustained serious head injuries after falling from the top of a nine-foot high refuse bin while working at Aspen. The container was one of several 40-cubic-yard roll-off containers that Aspen leased from Consolidated. Solares sued Consolidated for product liability, alleging that Consolidated had replaced the lids on the containers with ones that were unsafe because: they were more likely to become stuck; they required personnel to climb on top in order to open or close them; and Aspen failed to provide warnings or instructions concerning these hazards.[1]

Consolidated cross-complained against Aspen for indemnity and declaratory relief pursuant to the parties' lease agreement, which provided that "[Aspen] agrees to protect, defend, indemnify, and hold harmless [Consolidated] against all claims, damages, suits, penalties, fines, and liabilities for injury or death to persons or loss or damage to property arising out of [Aspen's] use, operation or possession of the Equipment."[2]

Shortly before trial, Aspen moved to bifurcate Consolidated's cross-complaint from the underlying product's liability complaint and try the indemnity claim first without a jury. Aspen's motion argued that no jury was required because interpretation of the indemnity agreement raised only a question of law, and because by existing case

---

[1] Solares's original form complaint alleged product liability under three theories – negligence, strict liability, and breach of warranty. On the eve of trial, he amended the complaint by deleting the negligence and breach of warranty theories.

[2] This language is at the end of a lengthy paragraph captioned "CUSTOMER'S [(ASPEN'S)] RESPONSIBILITY FOR CARE OF EQUIPMENT," which, among others, required Aspen to make safe and proper use of the containers by not improperly loading or overloading them.

law Aspen had no duty to indemnify Consolidated for a strict product liability claim when the indemnification agreement was silent on that issue. Consolidated opposed the motion, contending in its points and authorities that: (1) even under older case law, it was entitled to indemnification if its negligence had been merely passive; and (2) under more recent authority, even if had been actively negligent, Aspen was obligated to contribute based on the proportional share of its own negligence. Because there was evidence of Aspen's negligence, it made more sense to try all issues that arose from the complaint and cross-complaint at the same time.

At the hearing on Aspen's bifurcation motion, seven days before trial, counsel for Consolidated argued that evidence concerning Aspen's negligence would come from several witnesses who would testify about Aspen's use of the roll-off container. The trial court said it would try the indemnification cross-complaint first, in light of case authority concerning the absence of a duty to indemnify for strict product liability, which was Solares's sole remaining cause of action. The court told Consolidated, "[I]f you feel at that time that . . . there's any factual component to it, you can raise it at that time."

Consolidated asked whether the court wanted it to have witnesses available to testify when the bifurcated trial began. The court answered, "No. What I'm saying is if you feel there's a factual component -- the argument is that this is a legal issue. . . . [¶] Okay. If you feel there's a factual component, that may mean that I have to consider facts to determine the legal issue. But if it's a legal issue, then I can make findings of fact that are appropriate for the legal issue only. [¶] If you think that there are factual issues, then you can be prepared to present them at our hearing."

Consolidated asked again for its right to a jury trial on any factual issues. The court replied, "Well, you can request all of that. I'll look at everything and make the determination on that date [(January 19)]. But it's set for trial then."**3**

Next, Consolidated challenged Aspen's assertion that both the indemnification and declaratory relief claims were for the court to decide. The court answered that there was no right to a jury trial for a declaratory relief claim. "If there are factual issues that need to be determined for the declaratory relief I'll hear that evidence and you can present

---

**3** Trial actually commenced on January 20.

3

witnesses; okay." Counsel for Consolidated replied, "Sure. Understood." The court added that Consolidated was free to present briefs on the jury trial issue, clarifying that it was "not ruling on these issues now," but was simply deciding to bifurcate and try Consolidated's cross-complaint first.

When the bifurcated trial began the following week, the trial court put on the record an agreement by the parties that the trial "will take place without any testimony. That if there are any facts that are going to be discussed they will be stipulated facts." Consolidated agreed with that statement. The trial then proceeded much like argument on a law and motion matter. At one point during the argument, counsel for Consolidated claimed that the evidence would show that: Aspen knew about, but never tried to stop, its employees from overloading and climbing on top of the bins; Aspen never trained its employees or provided safety gear for using the containers; and Aspen was otherwise negligent concerning its handling of the refuse bins.

In response to these assertions, the trial court said, "All right. Now this is a factual issue; is it not?" Counsel for Consolidated said that it was, and counsel for Aspen said, "And we are not stipulating to those facts, Your Honor." Consolidated never offered any witnesses during the bifurcated trial, and never asked the trial court if it could do so. It did not raise the jury trial again.

The trial court took the matter under submission and eventually concluded Consolidated posed four questions in its request for a statement of decision: "1. Whether, and to what extent, the indemnity agreement . . . is to be applied between [Consolidated] and Aspen in connection with the claim of . . . Solares. . . . [¶] 2. Whether, and to what extent, a finding of active negligence on the part of [Consolidated] following . . . Solares's trial will affect the application of the Indemnity Agreement between [Consolidated] and Aspen. . . . [¶] 3. Whether, and to what extent, a finding of passive negligence on the part of [Consolidated] following . . . Solares's trial will affect the application of the Indemnity Agreement between [Consolidated] and Aspen. . . . [¶] 4. Whether, and to what extent, a finding of negligence on the part of Aspen following . . . Solares's trial will affect the application of the Indemnity Agreement between [Consolidated] and Aspen."

The trial court then issued a statement of decision in which it concluded that Aspen had no duty to indemnify Consolidated. Its reasoning was as follows: "This court construes the indemnity agreement entered into by [Consolidated] and Aspen to contain a general indemnity promise as discussed in *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 420 and cited with approval in *Maryland Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856. As such, the agreement requires Aspen to indemnify [Consolidated] regardless of whose negligence caused injury. Pursuant to *Maryland Casualty, supra*, under this type of indemnity agreement, Aspen is obligated to indemnify [Consolidated] unless [Consolidated] is actively negligent. Also pursuant to *Maryland Casualty, supra*, if [Consolidated] is strictly liable for [Solares's] injury, then [Consolidated] is actively negligent as a matter of law. Accordingly, the Court rules that Aspen has no obligation to indemnify [Consolidated]." (Italics added.) Consolidated did not object to the statement of decision.

The trial then proceeded as to Solares's claim. After the jury deadlocked, Solares settled with Consolidated, and judgment was entered for Aspen on Consolidated's cross-complaint.

## DISCUSSION

1.    *The Law Applicable to Indemnification Agreements*

Contracting parties are free to agree that one of them will indemnify the other for claims asserted against the latter. (Civ. Code, § 2772; *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 551 (*Crawford*).) Indemnification agreements are governed by the rules of contract interpretation, but ambiguities are construed against the indemnitee, the party that benefits from the indemnification agreement. (*Crawford,* at p. 552.) As a result, if a party seeks to be indemnified for his own active negligence, language on that point must be clear and explicit and will be strictly construed against the indemnitee. (*Ibid.*) "Active negligence" exists when an indemnitee has personally participated in an affirmative act of negligence, was knowingly connected to, or acquiesced in, negligent acts or omissions, or failed to perform a precise duty he had agreed to perform. (*Rooz v. Kimmel* (1997) 55 Cal.App.4th 573, 583, fn. 5.) "Passive

5

negligence" results from mere nonfeasance, such as the failure to discover a dangerous condition, or to perform a duty imposed by law. (*Ibid.*)

The parties here agree that the indemnity provision in their lease agreement was a so-called "general indemnity agreement" because it was silent on the issue of Consolidated's active negligence. Under the general rule, this meant that Aspen had no duty to indemnify Consolidated unless any negligence by Consolidated was considered passive. Strict product liability is a form of active negligence for purposes of construing indemnification provisions. (*Price v. Shell Oil Co.* (1970) 2 Cal.3d 245, 257-258; *Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45, 59-60.) Both *Price* and *Widson* held that the indemnitee under a general indemnity provision was not entitled to indemnification for claims of strict product liability.

Later decisions signaled a relaxation of this rule and permitted the actively negligent indemnitee under a general indemnification provision to seek indemnification from the indemnitor, at least to the extent the indemnitor's negligence contributed to a third party's damages. In *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, the Supreme Court held that while the active-passive negligence distinction was still vital, it was not dispositive. Instead, the scope of an indemnity provision ultimately turns on contractual interpretation and the intent of the parties as expressed in their agreement. This calls for an inquiry into the circumstances of the damage or injury and the language of the contract at issue in each case. When the parties have knowingly bargained for the protection at issue, even protection against its own active negligence, it should be afforded. (*Id.* at pp. 632-633.)

This flexible approach was applied in *Morton Thiokol, Inc. v. Metal Building Alteration Co.* (1987) 193 Cal.App.3d 1025 (*Morton Thiokol*). Morton Thiokol was the owner of a salt refinery and hired Metal Building to install a new roof on its facility. The contract included an indemnification provision that said Metal Building would indemnify Morton from liability sustained by reason of Metal's breach of contract or negligence. A worker was injured due to Metal's failure to follow safety precautions and by Morton's negligence by allowing the roof to become slick with salt. The worker sued and recovered against Metal and Morton based on Morton's own active negligence. When

6

Morton sought indemnification from Metal, Metal argued that it had no such duty because the indemnification provision was silent as to the effect of Morton's active negligence.

The *Morton Thiokol* court held that Morton was entitled to indemnification because the circumstances showed that was consistent with the parties' intent and the loss sustained would not have happened without the negligence of indemnitor Metal. "Where, as here, the agreement clearly indicates that one party was to be indemnified for any damages sustained as a result of another's breach of the contract, and it is undisputed that the accident would never have happened except for such breach, we conclude that the indemnity is viable notwithstanding the jury's finding of the indemnitee's 'active' negligence." (*Morton Thiokol, supra,* 193 Cal.App.3d at p. 1030.)

A similar result was reached in *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791 (*Hernandez*). In that case, a shipyard employee was injured in an accident involving a crane that his employer leased from a company called Carde. The employee brought a products liability claim against Carde, which in turn cross-complained against the employer under the indemnification provision in their lease agreement. The agreement provided that the employer would indemnify Carde for crane injury to any employee that was in any way caused by the employer. The trial court found that Carde was not entitled to indemnification because the jury had found that Carde had been actively negligent.

The *Hernandez* court reversed that portion of the judgment because a reasonable interpretation of the indemnification provision showed that the employer agreed "to indemnify Carde for the portion of Carde's liability attributable to [the employer's] fault. Such interpretation is consistent with Carde's reasonable expectation it would be indemnified for liability arising from the negligence of [employer]. Thus, we conclude despite its 20 percent active negligence Carde was contractually entitled to indemnification from [employer] for the portion of [employee's] joint and several economic damage award attributable to [employer's] 55 percent negligence that is ultimately paid by Carde." (*Hernandez, supra,* 28 Cal.App.4th at p. 1822.) This result

7

was consistent with the "evolving and presumably more equitable trend in statutory and case law toward allocating liability in proportion to comparative fault." (*Id.* at p. 1823.)

2. *Consolidated Waived Its Opportunity to Present Evidence Concerning Each Party's Negligence*

As our previous discussion shows, Consolidated would be entitled to indemnification from Aspen if Consolidated's negligence had been merely passive. Relying on decisions such as *Morton Thiokol* and *Hernandez*, Consolidated contends that even if it had been actively negligent, Aspen would be required to indemnify it in part based on Aspen's own negligence. Consolidated contends that the judgment must be reversed because the trial court's bifurcation order led the court to rule on the enforceability of the indemnification provision without considering evidence that Consolidated had been passively negligent, or, in the alternative, even if it had been actively negligent, that Aspen's negligence contributed to Solares's injuries.

Even if Consolidated's interpretation of *Hernandez* and *Morton Thiokol* were correct, a necessary predicate to their applicability is negligence by the indemnitor – in this case Aspen – that was at least one cause of Solares's injuries. While Consolidated contends that the trial court entered judgment on its indemnification cross-complaint without receiving any evidence on that issue, its opening appellate brief makes no mention of the trial court's statement that if Consolidated believed there were factual issues that had to be resolved as part of the trial court's analysis, then Consolidated should be prepared to present them at the hearing. The same is true for the passive negligence exception. Absent evidence that could be construed as passive negligence by Consolidated, there is no basis for that exception. The record before the trial court and before us is devoid of any evidence showing Consolidated was not actively or passively negligent or that Aspen was negligent or caused Solares's injuries.

As set forth in detail in our Facts and Procedural History, the trial court made it abundantly clear that Consolidated was free to present evidence during the bifurcated trial. The trial court also said that it was not ruling on whether Consolidated was entitled to have a jury try the cross-complaint, inviting Consolidated to raise that issue at trial as

8

well. Nor does Consolidated mention that when the trial court said for a third time that Consolidated could present witnesses, its counsel replied, "Sure. Understood." Finally, Consolidated does not acknowledge its stipulation at the start of the bifurcated trial that no witnesses would be presented. Instead of taking advantage of this opportunity, Consolidated stipulated that it would present no witnesses.[4] As a result, the record contains no evidence to support findings that Consolidated had been passively negligent or that Aspen was negligent in connection with Solares's injuries.[5]

Of course, Aspen is quick to point this out, along with the doctrines of waiver and invited error, which apply when an issue on appeal arises because of a party's affirmative conduct or failure to take steps to correct or avoid the error. Accordingly, where a deliberate trial strategy leads to an unfavorable outcome, counsel may not use that tactical decision in order to claim prejudicial error. (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1166-1167.)[6]

Because Consolidated chose not to present evidence on the issues of either its own passive negligence or Aspen's contributory negligence, we find the doctrines of waiver and invited error applicable here. Absent such evidence, there is no basis for Consolidated's indemnification claim.

3.      *Consolidated Waived Aspen's Duty to Defend*

The indemnification provision stated that Aspen would also defend Consolidated against claims arising out of Aspen's use of the roll-off containers. Consolidated contends the trial court erred by entering judgment for Aspen because the duty to defend is broader than the duty to indemnify (*Food Pro Internat., Inc. v. Farmers Ins. Exchange*

---

[4]      Consolidated contended during oral argument that the trial court said it would not be allowed to present any evidence. As the transcript from the proceedings shows, that assertion is false.

[5]      Consolidated has also never articulated a factual or legal basis that might show it had been passively negligent.

[6]      Although Aspen raised the issue in its respondent's brief, Consolidated's reply brief fails to acknowledge or address it.

9

(2008) 169 Cal.App.4th 976, 985), thereby obligating Aspen to provide a defense from the outset of the litigation regardless of whether the final result showed Aspen had no duty to indemnify. (*Crawford, supra,* 44 Cal.4th at pp. 553-554.)

Although the cross-complaint and trial briefs mentioned in passing that Consolidated sought to recover its litigation fees and costs under the defense portion of the indemnification provision, Aspen contends the issue was not truly raised at trial and therefore cannot be raised for the first time on appeal. (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 28-29.) We agree.

Consolidated never briefed or argued the issue whether Aspen's duty to defend arose. It never alleged or mentioned whether it had tendered its defense to Aspen, as required by Civil Code section 2778, subdivision (4). It never alleged or mentioned the amount of attorney's fees and costs it sought, and therefore never addressed whether those fees were incurred in good faith, as required by section 2778, subdivisions (3) and (5). Even though the trial court never reached the defense issue in either its original proposed judgment or final judgment and statement of decision, Consolidated never complained about that omission. On this record, we hold that the issue was not adequately raised below and therefore deem it waived on appeal.

## DISPOSITION

The judgment for cross-defendant and respondent Aspen is affirmed. Aspen shall recover its appellate costs.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

10