[Civ. No. 43400. First Dist., Div. One. Jan. 17, 1980.]

GUY F. ATKINSON COMPANY, Cross-complainant and Appellant, v.
GERALD SCHATZ, Cross-defendant and Respondent.

COUNSEL

Hall, Henry, Oliver & McReavy and Lee H. Cliff for Cross-complainant and Appellant.

Mitchell, Dedekam & Angell, Clifford B. Mitchell and Michael J. Murray for Cross-defendant and Respondent.

OPINION

**GRODIN, J.**—This case involves the interpretation and application of an indemnity agreement between appellant, Guy F. Atkinson Company

and respondent, Gerald Schatz, dba Southern Oregon Rebar. Appellant served as general contractor in the construction of a highway bridge over Humboldt Bay between Eureka and the Town of Samoa. Respondent was a third-tier subcontractor performing iron work on the job, and their agreement contained the following clause: "*Subcontractor shall indemnify Contractor against any claim, loss, damage, expense or liability arising out of acts or omissions of Subcontractor in any way connected with the performance of this Subcontract unless due solely to Contractor's negligence.* The foregoing shall include indemnity for property damage and for injury or death of any person, including employees of Contractor or Subcontractor. Subcontractor shall, on Contractor's request, but at his own expense, defend any suit asserting a claim covered by this indemnity. Subcontractor shall pay all costs, including attorney's fees, incurred in enforcing this indemnity. 'Acts or omissions of subcontractor' shall include acts or omissions of lower tier subcontractors, suppliers, or others operating within the scope of authorization of Subcontractor." (Italics added.) The agreement required respondent to obtain insurance in specified amounts to cover the indemnity obligation.

The bridge project involved the construction of three coffer dams, which are watertight, temporary enclosures from which water is pumped to expose the bottom of a river or bay. On May 7, 1970, respondent's two employees, Walker and Hanson, were working on the floor of one of the dams when a 3,600-pound water pump fell from its position on top of the dam and injured them. An employee of appellant named Enright went to rescue them and he, too, was injured. Walker and Hanson filed suits against the State of California and appellant. Enright sued only the state but appellant, under its agreement with the state, was required to defend and indemnify. The Walker and Enright suits were settled, and the Hanson suit went to trial, resulting in a jury verdict and judgment in favor of Hanson. The jury made a special finding that Hanson was not contributorily negligent. By stipulation between appellant and respondent the indemnity issue, raised by cross-complaint, was then submitted to the judge who presided over the Hanson trial, based on the testimony in that trial and certain discovery products.

The pertinent trial court findings may be briefly summarized. Appellant was guilty of active negligence. It was appellant who placed the water pump in the location from which it fell, on top of two beams athwart the coffer dam. The pump was not secured to the beams, and the

beams were not secured to the dam. The pump fell as a result of waves created by appellant's operation of a barge in the water above the dam, and it was the "surging movements" created by the barge which constituted the proximate cause of the injuries. Hanson and Walker had walked across the area where the pump was located earlier on the morning of the accident, but the pump was not running at the time, and therefore not vibrating. Hanson saw that the pump was not secured but Walker, the foreman, did not notice one way or the other and, because the pump was not running, "figured it was safe." This pump, or some other pump, had fallen on a previous occasion but no one had ever warned Walker or Hanson of that prior incident. Walker acted "reasonably and prudently" in entering and working in the coffer dam. The court declined to make findings, requested by appellant, related to appellant's contention that respondent was at least passively negligent for failing to provide its employees with a safe place to work.[1] Rather, it concluded that "Based upon the evidence in this case, the agreement, the law and public policy, the Court finds this is not a case which calls for the shifting of the burden of liability from one who was clearly and actively negligent, to one who was at most passively negligent." Appellant contends respondent was negligent as a matter of law and that appellant is therefore entitled to indemnification under the agreement.

In reviewing the trial court's conclusion we confront a lengthy history of California case law dealing with express indemnity agreements. (See Conley & Sayre, *Indemnity Revisited: Insurance of the Shifting Risk* (1971) 22 Hastings L.J. 1201.) Much of that case law focuses upon the conduct of the indemnitee, and considers whether the indemnitee may recover for damage caused or contributed to by his own negligence. It has been suggested from time to time that it may be contrary to public policy to permit the shifting of responsibility from one person at fault to another, on the theory that such a shifting removes incentives for safety (e.g., *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656 [93 Cal.Rptr. 376]), and the Legislature itself has de-

---

[1] Appellant proposed findings that respondent was at least passively negligent and that, as a consequence, the accident was not caused solely by appellant's negligence. In that connection appellant requested a finding, based upon Walker's deposition testimony, that Walker was in fact aware of the prior incident with a falling pump. Appellant also points to what it characterizes as inconsistency in findings by the trial court as to whether or not the location in which Hanson and Walker were working was a "safe place to work," and it objects to a finding (which it characterizes as a conclusion) that the accident "did not arise out of Rebar's performance of its reenforcing steel contract." We find it unnecessary, in our view of the case, to decide the issues posed by these various contentions.

clared provisions in construction contracts which purport to provide indemnity from the "sole negligence or willful misconduct of the promisee" to be contrary to public policy and void. (Civ. Code, § 2782. See also Civ. Code, §§ 1668, 2773, and 2784.5.) Subject to such statutory limitation, however (cf. *Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 809, fn. 8 [144 Cal.Rptr. 408, 575 P.2d 1190]), California courts have come to regard indemnity provisions in construction agreements as a generally acceptable method of distributing loss among insurance carriers. (*Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 48-49 [41 Cal.Rptr. 73, 396 P.2d 377].) Such provisions have been distinguished from *exculpatory* clauses which seek to relieve a party from liability to the injured person (*id.*, at p. 48), and it has been observed that indemnity agreements are no more likely to remove incentive for safety than insurance policies. (*John E. Branagh & Sons* v. *Witcosky* (1966) 242 Cal.App.2d 835, 841 [51 Cal.Rptr. 844]. For a thorough discussion of the function of indemnity agreements, see Sweet, Legal Aspects of Architecture, Engineering and the Construction Process (2d ed. 1977) § 33.05 et seq.) ■ Thus, the legal principles governing express indemnity "reflect its contractual nature, permitting great freedom of action to the parties in the establishment of the indemnity arrangements . . . ." (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 507 [146 Cal.Rptr. 614, 579 P.2d 505].)

Those principles do, however, subject "the resulting contractual language to established rules of construction." (*E. L. White, Inc.* v. *City of Huntington Beach, supra*, 21 Cal.3d at p. 507.) In *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622 [119 Cal.Rptr. 449, 532 P.2d 97], the Supreme Court summarized the then existing law as follows: "Past cases have held that an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. (*Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 44. . . .) If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. (See *Markley* v. *Beagle, supra* [66 Cal.2d 951] at p. 962; *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 624. . . .) While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. (*Markley* v. *Beagle, supra*, at p. 962; *Morgan* v. *Stubblefield, supra*, at p. 624; see also *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656, 661. . . .) [¶] Provisions pur-

porting to hold an owner harmless 'in any suit at law' (*Markley* v. *Beagle, supra*, at p. 961), 'from all claims for damages to persons' (*Morgan* v. *Stubblefield, supra* at p. 626), and 'from any cause whatsoever' (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 422-423 . . .), without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." (*Id.*, at pp. 628-629.)

Appellant contends that the indemnity clause at issue *does* "address itself to the issue of an indemnitee's negligence" through the phrase "unless due solely to Contractor's negligence" and thus constitutes a "specific" clause applicable even in the face of active negligence by the indemnitee. In support of that contention, appellant relies upon dicta in some of the earlier cases, characterizing similar language to that effect.[2] To the extent that *Rossmoor* includes the proposition that the agreement must be "clear and explicit and is strictly construed against the indemnitee," however, appellant's conclusion is debatable. Surely clearer and more explicit language could be found to express the simple proposition that the agreement is to provide indemnity whether the indemnitee is negligent actively, passively, or not at all. Moreover, the opinion in *Rossmoor* goes on to take note of the fact that the "active-passive" dichotomy has been criticized as serving only to "'muddy already troubled waters,'" and as creating an "inflexible rule of

---

[2] In *Goldman*, the court held that the indemnity agreement between a general contractor and a subcontractor was *not* sufficiently specific to provide for indemnity against the general contractor's active negligence, but in dicta the court did characterize as sufficiently specific for that purpose an indemnity agreement between the general contractor and the owner. That agreement provided that the contractor would indemnify and save the owner harmless "'from all claims, loss damage, injury and liability of every kind, nature and description, directly or indirectly arising from the performance of the contract or work, *regardless of responsibility for negligence*; and from any and all claims, loss, damage, injury and liability, howsoever the same may be caused, resulting directly or indirectly from the nature of the work covered by the contract, regardless of responsibility for negligence.'" (62 Cal.2d at p. 46, italics added.)

In *Witcosky*, the trial court held that an indemnity agreement was sufficiently specific to provide for recovery by the indemnitee where *both* the indemnitee and the indemnitor were guilty of active negligence. On appeal, the indemnitor's sole contention was that the indemnitee was precluded by public policy from recovering because his negligence consisted of a violation of a state safety order. (242 Cal.App.2d at p. 837.) In the course of its opinion rejecting that contention, the court characterized the agreement as one which "expressly provides for indemnity where the loss is occasioned by the concurrent negligence of the indemnitee and the indemnitor." (*Id.*, at p. 842.) The clause in question, quite similar to that at issue here, provided for agreement by the subcontractor "'To fully indemnify and save harmless the Contractor and Owner against any and all loss, damage, liability, claim, demand, suit or cause of action resulting from injury or harm to any person or property arising out of or in any way

construction which may not reflect the intent of the parties." (13 Cal.3d at p. 632.) "In actuality," the court stated, "we do not employ the active-passive dichotomy as wholly dispositive of this or any other case." (*Ibid.*) (2) Rather, "while adhering to the underlying distinction between active and passive negligence which has long been accepted by the bench, the bar, and the insurance industry, we hold that...the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Id.*, at p. 633.)

Assuming arguendo, therefore, appellant's proposition that its active negligence should not per se bar indemnification, determining whether the parties have "knowingly bargain[ed] for the protection at issue" requires further inquiry. There remains for consideration, particularly, the question of respondent's negligence. If respondent were not negligent at all, then quite clearly appellant would not be entitled to recover, since both the agreement and applicable law preclude indemnification for injuries caused solely by the negligence of the indemnitee. The same result would follow if respondent were negligent but its negligence did not constitute a concurrent proximate cause of the injuries. (*Harness* v. *Pacific Curtainwall Co.* (1965) 235 Cal.App.2d 485 [45 Cal.Rptr. 454]; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1979) § 23.04, p. 23-17.) ■ But even if respondent could be said to be negligent on these facts, as appellant contends, its negligence consisted at most in the fact that its two employees on the job performed their work in an area exposed to a

---

connected with the performance of work under this subcontract, excepting only such injury or harm as may be caused solely and exclusively by the fault or negligence of Contractor.'" (*Id.*, at p. 836, fn. 2.) In the course of its opinion, the court characterized that agreement as one which "expressly provides for indemnity where the loss is occasioned by the concurrent negligence of the indemnitee and the indemnitor." (*Id.*, at p. 842.)

In *Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra,* 15 Cal.App.3d at page 666, the court distinguished *Witcosky* on the ground that the agreement in that case "expressly said that it covered everything except injury caused solely and exclusively by fault of the indemnitee." And in *Whitmire* v. *H. K. Ferguson Co.* (1968) 261 Cal.App.2d 594 [68 Cal.Rptr. 78], there is some suggestion in the opinion that language similar to that contained in the instant clause, proposed but rejected by the subcontractor, would have been sufficient to render the clause applicable despite the indemnitee's negligence.

dangerous condition created by appellant. We find no reported California case which has upheld indemnification in such a situation. To read the agreement as providing for indemnity in such a situation would come very close to providing indemnity for the "sole negligence" of the indemnitee in situations where the indemnitee's negligence consists of creating a hazardous condition on the job. Considering the relationship between the parties, and the fact that the agreement was drafted by appellant, it would seem that if such a result were intended more precise language could and should have been used to express that intent. Taking into account the circumstances of the injury in the context of the contractual language as instructed by *Rossmoor*, we hold that the trial court was correct in its denial of recovery to appellant, and we affirm.

Racanelli, P. J., and Newsom, J., concurred.