[No. E000448. Fourth Dist., Div. Two. Sept. 17, 1985.]

RALPH M. PARSONS COMPANY,
Cross-complainant and Respondent, v.
COMBUSTION EQUIPMENT ASSOCIATES, INC.,
Cross-complainant and Appellant;
DUDICK CORROSION PROOF MANUFACTURING, INC.,
Cross-defendant and Respondent.

214

COUNSEL

Kinkle, Rodiger & Spriggs and James L. Price for Cross-complainant and Appellant.

Wilson, Borror, Dunn & Scott and James R. Dunn for Cross-complainant and Respondent.

Bruggeman, Smith & Peckham, Richard C. Gibson and Charles A. Peckham for Cross-defendant and Respondent.

OPINION

**KAUFMAN, J.**—Appellant Combustion Equipment Associates, Inc. (hereafter Combustion) appeals from judgments of the superior court denying its claim for express indemnity against Dudick Corrosion Proof Manufacturing, Inc. (Dudick) and holding Combustion liable under an express indemnity agreement to Ralph M. Parsons Company (Parsons)[1] for injuries suffered by Joseph H. Miranda, who was the plaintiff in the action.

### Introductory Facts

Parsons was the contractor on a multimillion dollar construction project for the Kerr-McGee Chemical Corporation (Kerr-McGee) in Trona, California, involving thousands of workers. Combustion entered into a subcontract with Parsons to do a part of the job. Combustion in turn subcontracted a part of its work to Dudick.

Plaintiff Joseph Miranda was an employee of Dudick. He was injured at the jobsite on February 1, 1977, when he was struck by a falling board that was being used to bridge between two scaffolds.

The facts relating to the injury will be set forth separately and the facts relating to the agreements between Parsons and Combustion and between Combustion and Dudick will be developed separately in connection with the discussion of each agreement.

---

[1]Ralph M. Parsons Company was initially sued erroneously as Parsons Construction Company.

## Procedural History

Plaintiff filed his complaint for personal injury on January 31, 1978, against Parsons and Does 1 through 20. Parsons filed its answer on March 22, 1978, and on March 7, 1979, filed its cross-complaint against Combustion for express and implied indemnity, partial contribution and declaratory relief. Combustion filed its answer to Parsons' cross-complaint on April 11, 1979, and also cross-complained against Dudick for indemnity, contribution and declaratory relief in October 1979.

Dudick demurred to Combustion's cross-complaint, and Combustion filed a first amended cross-complaint on or about March 6, 1980. Dudick again demurred to the first amended cross-complaint of Combustion, and the demurrer was sustained as to the second (implied indemnity) and third (equitable indemnity and/or contribution) causes of action without leave to amend. ██ ██ ██ The ground stated for sustaining the demurrer was Labor Code section 3864.[2] On June 19, 1981, Dudick filed its answer to the remaining causes of action (express indemnity and declaratory relief) of Combustion's cross-complaint.

At a settlement conference on May 12, 1981, plaintiff Miranda's attorney apparently realized for the first time that Combustion had not been named or served as a defendant in the personal injury action. Plaintiff amended his complaint to substitute Combustion for defendant Doe I and served Combustion in approximately July 1981, and Combustion answered on August 14, 1981.

Dudick moved to bifurcate the trial to try the cross-action between Combustion and Dudick before trial on the main action. The motion was granted over Combustion's objection. Parsons made a similar motion to bifurcate the trial on its cross-complaint, but Parsons' motion was denied.

Trial to the court on Combustion's cross-complaint for indemnity against Dudick ensued and resulted in a determination in favor of Dudick.

---

[2]Labor Code section 3864 provides: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury." Thus, no cause of action may be maintained against the employer for implied or equitable indemnity or contribution, but only on the basis of an express indemnity agreement. Otherwise, the employer's limited liability under workers' compensation law would be largely illusory. (See *Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 807-808 [144 Cal.Rptr. 408, 575 P.2d 1190].)

Before trial on the main action and Parsons' cross-complaint for indemnity, Parsons entered into a settlement agreement with plaintiff Miranda for $100,000, which the trial court approved as a good faith settlement. Jury trial on the complaint ensued. The jury fixed plaintiff's damages at $300,000 and by special verdicts found Combustion 50 percent negligent, Dudick 40 percent negligent and plaintiff Miranda 10 percent negligent. The jury did not consider or fix the percentage of negligence attributable to Parsons but at the court's request rendered an advisory verdict that Parsons' negligence was "active" and Combustion's negligence was "passive."

By stipulation Parsons' cross-complaint for indemnity was tried to the court sitting without a jury. The court gave judgment in favor of Parsons against Combustion for the amount of Parsons' settlement with plaintiff Miranda ($100,000) plus attorney's fees and costs.

Combustion's appeal is from the judgment as to each of the cross-complaints: the award to Parsons of indemnity against Combustion, and the denial to Combustion of indemnity from Dudick.

### Facts Relating to the Injury

Dudick's portion of the job consisted of applying an acid resistant material to the inside surfaces of large vessels called absorbers at the jobsite. In order to perform its job, Dudick required scaffolds. Leon Hunter, a Parsons carpenter and foreman, constructed two rolling scaffolds for use by Dudick. To keep the planks from slipping off the scaffold he nailed pieces of three-fourths inch plywood cut two inches long to the underside of each end of the scaffold planks. These devices are referred to as "cleats." In addition, the planks were wired down to the scaffolds. Hunter also constructed bridging between the two scaffolds. The bridging boards were nailed down and handrails of two by four inches lumber were installed between the scaffolds. When the scaffolds were completed they met all relevant safety requirements.

Parsons, as the general contractor, held weekly or biweekly safety meetings. Hunter, the Parsons carpenter/foreman, was required by Parsons to have safety meetings in his area of the jobsite. In addition, each shop steward had special meetings for their own personnel, and the shop stewards would meet together once a week. No one from Dudick attended the safety meetings. In fact, plaintiff Miranda testified he was instructed by Dudick personnel not to attend safety meetings.

Parsons employed a safety supervisor, Charles Ryden, who was responsible for the project safety program. Ryden conducted safety committee

meetings once a week with members from each craft. Among the topics discussed were the required safety features on scaffolding, including toe-boards, rails, cleats, and methods of securing boards to scaffolds.

Hunter, the Parsons carpenter/foreman, testified that he had complained to Ryden, the safety supervisor, before the accident about unsafe modifications Dudick had made to the scaffolds. After Hunter constructed the scaffolds, he observed that Dudick personnel had removed the handrails and some of the bridging boards between the two scaffolds. He also saw that the bridging boards were no longer nailed down. Hunter testified that Ryden told him to "back off" and that it was "none of his business." Ryden denied making such statements.

At the time he was working for Dudick, plaintiff noticed that the bridging boards between the two scaffolds were not secured. Sometimes one plank, and at other times two planks, would be used to bridge between the two scaffolds. When moving the scaffolds, the workers would remove the bridging boards, stacking them on one of the scaffolds. Then the scaffolds would be moved. The accident occurred on February 1, 1977, when some of plaintiff's fellow Dudick workers were about to move one of the scaffolds. No one checked to see if the bridging boards had been removed. The workers pushed the scaffold out from under a bridging board, which fell and struck the plaintiff. The bridging board had not been nailed down. Plaintiff was not wearing his hard hat at the time he was struck by the falling board.

Steven Griffin testified he was the supervising employee for Combustion on the job. Griffin knew it was his duty to report any unsafe practices he noticed. Griffin did not, however, attend any of the safety meetings. He testified he was responsible to supervise the safety of the Combustion portion of the job, he was on the jobsite on almost a daily basis, he would check to see if Dudick was following safety practices, and he would observe the jobsite and determine if any safety violations existed. Although Griffin often went up onto the scaffolds to inspect the work in progress, he did not see any unsecured bridging boards.

### Parsons v. Combustion

The contract between Parsons and Combustion called for Combustion to design and install a "flue gas cleaning system" and to install a lining on the ducts, for a contract price of $5,367,100. The contract designated Kerr-McGee Chemical Corporation as the owner, Parsons as the contractor and Combustion as the subcontractor. Among other things the contract provided that Combustion would carry comprehensive public liability insurance cov-

ering the work, including coverage for liability assumed by contract, with bodily injury and death limits of not less than $500,000 as to any one person and $1 million as to any one occurrence. Combustion agreed that in the performance of the work it would abide by and enforce all fire and safety regulations and comply with all applicable laws, ordinances, statutes and rules and regulations, including all applicable federal, state and local laws, rules and regulations relating to safety and health. As part of the provision so providing, Combustion agreed "to hold CONTRACTOR and OWNER respectively free and harmless of and from, and defend and indemnify them against all liability, loss, damage, expense, costs (including without limitation costs and fees of litigation) of every nature arising out of any failure or alleged failure of SUBCONTRACTOR to perform and observe all of the requirements of all or any thereof said laws, rules and regulations; or otherwise arising out of or in connection with SUBCONTRACTOR's performance of Work hereunder or its failure to comply with any of its obligations contained in the Agreement, *except such loss or damage which was caused solely by the negligence of CONTRACTOR or of OWNER.*" (Italics added.)

The jury's verdict and special findings established that the plaintiff was injured as a result of an unsecured bridging board which fell and struck the plaintiff. The unsecured bridging board was in violation of a construction safety order contained in section 1646, subdivision (e), of title 8 of the California Administrative Code, which requires that some method be employed to prevent platform planks on rolling scaffolds from slipping off.[3] The trial court found that Parsons and Combustion bargained for and considered the risk of injury from the violation of a safety order such as section 1646, subdivision (e); that the contracting parties placed the responsibility for insuring against any such violation on Combustion; and that the indemnity clause covered all injuries and damages arising from the work except for injuries caused solely by the negligence of Parsons. Because the plaintiff's injuries here were not caused solely by the negligence of Parsons but by the concurrent negligence of Combustion, Dudick, plaintiff and Parsons, the court concluded Combustion was liable to indemnify Parsons under the indemnity agreement. The court further determined that Parsons did not engage in wilful misconduct nor did it exhibit reckless disregard for the safety of the plaintiff.

---

[3]Section 1646, subdivision (e), reads as follows: "(e) Platform planks on rolling or tower scaffolds shall not project farther than 18 inches past supports at the edges of the scaffold. An effective method of preventing platform planks on rolling scaffolds from slipping off must be provided. The nailing of cleats of 1-inch material on the underside of each projecting end, or other equivalent means, will be acceptable. Platforms shall be tightly planked for the full width of the scaffold except for any necessary entrance openings." (Order authorized pursuant to Lab. Code, § 142.3.)

Although the trial court did not expressly adopt the advisory jury verdict characterizing Parsons' negligence as "active" and Combustion's negligence as "passive," in its tentative decision on the cross-complaint the court referred to those determinations of the jury and appeared to accept them arguendo.[4]

■ Combustion contends the indemnity clause contained in its contract with Parsons, quoted above, constitutes a general, as opposed to a specific, indemnity agreement and that the award of indemnity to Parsons was erroneous, because Parsons was actively negligent, and a general indemnity clause authorizes indemnity only if the indemnitee's negligence was passive in nature. Combustion properly states the rule (see, e.g., *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97]; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 961-962 [59 Cal.Rptr. 809, 429 P.2d 129]); however, the rule has no application to this case because, contrary to Combustion's conclusion, the indemnity agreement between Parsons and Combustion was not a general indemnity agreement.

A general indemnity agreement is one that does not address and is silent with respect to the issue of the indemnitee's negligence. (*Gonzales* v. *R. J. Novick Constr. Co.*, supra, 20 Cal.3d 798, 809; *Rossmoor, supra,* 13 Cal.3d 622, 628, 631-632; *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 45 [41 Cal.Rptr. 73, 396 P.2d 377]; *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 415 [340 P.2d 604].) Here, the indemnity agreement between Parsons and Combustion is not silent with respect to the issue of Parsons' negligence; the issue of Parsons' negligence is specifically addressed. The indemnity agreement provides that Combustion is to indemnify Parsons and hold it free and harmless from all liability, loss or damage arising out of any failure of Combustion to observe safety regulations or otherwise arising out of or in connection with Combustion's performance of the work, except for "loss or damage which was caused solely by the negligence of CONTRACTOR [Parsons] or of OWNER [Kerr-McGee]." Since only loss or damage caused solely by Parsons' or Kerr-McGee's negligence was excluded, loss or damage resulting from the combined negligence of Combustion and Parsons, whether active or passive, was necessarily included. (See *John E. Branagh & Sons* v. *Witcosky* (1966) 242 Cal.App.2d 835, 836, fn. 2 and accompanying text, 842 [51 Cal.Rptr. 844]; see also *Goldman* v. *Ecco-Phoenix Elec. Corp.*, supra, 62 Cal.2d 40,

---

[4]In its tentative decision the court stated in relevant part: "In the case in chief, the jury was asked to make special findings to assist the Court in determining the Cross-Complaint. The jury concluded that the active negligence of PARSONS and the passive negligence of COMBUSTION both were proximate causes of Plaintiff's injuries."

46-49; *Burlingame Motor Co. v. Peninsula Activies, Inc.* (1971) 15 Cal.App.3d 656, 665-666 [93 Cal.Rptr. 376]; *Whitmire v. H. K. Ferguson Co.* (1968) 261 Cal.App.2d 594, 599-600 [68 Cal.Rptr. 78].) ■ Indemnity agreements are to be interpreted under the same rules governing other contracts with a view to determining the actual intent of the parties. (*Rossmoor, supra,* 13 Cal.3d 622, 632-633; *Goldman v. Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, 44; *Harvey Mach. Co. v. Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445, 447 [6 Cal.Rptr. 284, 353 P.2d 924]; *Southern Cal. Gas Co. v. Ventura etc. Co.* (1957) 150 Cal.App.2d 253, 257 [309 P.2d 849].) We perceive no significant ambiguity in the agreement between Combustion and Parsons.

We are cognizant of the fact that the court in *Guy F. Atkinson Co. v. Schatz* (1980) 102 Cal.App.3d 351 [161 Cal.Rptr. 436] intimated that an indemnity agreement covering all liability except that caused solely by the negligence of the indemnitee ought not to be classified as a specific, as opposed to a general, indemnity agreement, observing "[s]urely clearer and more explicit language could be found to express the simple proposition that the agreement is to provide indemnity whether the indemnitee is negligent actively, passively, or not at all." (*Id.,* at p. 357.) However, the court did not make its decision on that basis. In fact, it assumed the contrary arguendo and went on to construe the contract, observing that in the *Rossmoor* case the California Supreme Court stated it did not "employ the active-passive dichotomy as wholly dispositive" and held that "the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Rossmoor, supra,* 13 Cal.3d 622, 632, 633; *Guy F. Atkinson Co. v. Schatz, supra,* 102 Cal.App.3d 351, 358.)

■ Here, we believe, as did the trial court, that the indemnity agreement between Parsons and Combustion clearly and explicitly addresses the issue of Parsons' negligence. It provides that Combustion shall indemnify Parsons for all liability in connection with the work unless it was caused solely by the negligence of Parsons or Kerr-McGee. It follows necessarily that all other liability, whether resulting from the negligence of Combustion or the concurrent negligence of Combustion and Parsons and without regard to whether the negligence of the parties was "active" or "passive," was intended to be the responsibility of Combustion. Good legal draftsmanship dictates that coverage be expressed by all-inclusive terms such as "all" or

"of every kind, nature and description" and that exclusions be specifically enumerated. As is known to every experienced draftsman, when an attempt is made to enumerate in an indemnity provision the specific kinds of liability covered, the draftsman is apt to run afoul of the doctrine of *expressio unius est exclusio alterius,* regardless of the care taken to avoid it. Moreover, in attempting to avoid the problem, so many qualifying words and phrases may be required as to make the provision virtually incomprehensible.

Finally, the trial court in this case expressly found that Combustion's obligation to indemnify Parsons for liability resulting from the violation of safety regulations was specifically considered and bargained for by the contracting parties. The evidence, including the surrounding circumstances such as the magnitude of the job and the relative situations of the parties, as well as the insurance requirement found in the contract, amply supports that finding.

The award of indemnity to Parsons from Combustion was proper and will be affirmed.

### Combustion v. Dudick

The contract between Combustion and Dudick called for Dudick to prepare and install linings on all surfaces of absorbers and outlet ducts at a price of $110,000. The documentary evidence of the contract between Combustion and Dudick consisted of a letter of intent from Combustion to Dudick dated August 27, 1976, and a purchase order dated May 20, 1977, prepared by Combustion on its preprinted form.

Among other things, the letter of intent provided: "Subcontractor (Dudick) accepts CEA Subcontract Agreement Terms and Conditions which shall govern." A blank preprinted Combustion form of subcontract agreement was either attached to or furnished with the letter of intent. The form subcontract agreement designates Combustion as the "Contractor" and the other party to the contract as the "Subcontractor." Among other things the form subcontract agreement provides that the subcontractor agrees "to be bound to the Contractor by the terms of the General Conditions of the Contract between Owner and Contractor, the Drawings, Specifications (and supplements thereto, if any) and to assume toward Contractor all the obligations and responsibilities that Contractor, by said documents, assumes toward the Owner." It further provides: "Contractor shall not be liable to Subcontractor or to any other person whatsoever for, and Subcontractor agrees to indemnify, and save and hold Contractor harmless of, from and against and to defend and protect Contractor against, any and all claims,

liabilities, demands, loss, damages, costs, expenses, including attorney's fees, arising from any injury or damage that may result to any person or property by or from or in connection with any cause whatsoever occurring or arising from or in connection with the furnishing of materials or performance of work by Subcontractor referred to in Section 2 and elsewhere in this Agreement or occurring in or about or in connection with the premises or site or any part thereof upon or in connection with which Subcontractor agrees to furnish materials and perform work hereunder, and in this connection Subcontractor agrees, at Subcontractor's own expense, and in companies, amounts and forms approved in writing by Contractor, to carry all Workmen's Compensation Insurance and Public Liability and Property Damage Insurance and such other insurance covering all of the foregoing which may be necessary or required by the Contract and/or by the Contractor and/or by the Owner for the protection of Contractor and Subcontractor and Owner during the progress of and/or in any manner connected with the furnishing of materials and the performance of the work herein agreed to be furnished and promptly performed by Subcontractor.''

The purchase order called for Dudick to: ''Deliver, prepare and install linings on all surfaces of absorbers and outlet ducts as shown and called for in CEA request for quotation 037900-11-Q1 and in accordance with CEA letter of intent dated August 27, 1976.'' On the reverse of the purchase order were printed some 22 paragraphs, number 8 of which, entitled ''INDEMNITY'' reads: ''Seller [presumably Dudick] will indemnify and save harmless Combustion Equipment Associates, Inc., from and against any and all demands, loss or liability and resulting expenses, including death or damage received or sustained by any person or persons, including any employee, representative, agent or invitee of Seller or any of its subcontractors, by reason of any act or neglect on the part of Seller or its subcontractors, or the employees, representative, agents or invitees of Seller or its subcontractors, in connection with or arising out of the furnishing of the goods, materials or work hereunder. Combustion Equipment Associates, Inc., after any such demand, loss or liability may withhold from any amount at any time payable to the Seller under this purchase order any sum or sums and/or for such period or periods as Combustion Equipment Associates may deem necessary to protect it against possible loss or expense, including attorney's fees, from or in connection with any such demand, loss or liability.''

Paragraph 16 entitled ''ENTIRE AGREEMENT,'' reads: ''The agreement resulting from Seller's [Dudick's] acceptance of this purchase order, either by remitting Seller's acknowledgment form or by delivery, merges all prior negotiations of the parties, supersedes all prior agreements, and constitutes

the entire contract between Combustion Equipment Associates, Inc. and Seller . . . ."

As observed *ante* under the heading "Procedural History," over the objection of Combustion, the court granted Dudick's motion to bifurcate the trial of Combustion's cross-complaint from trial of the main action. The principal reason for the court's granting the motion for bifurcation appears to have been that in view of Dudick's stipulation for purposes of trial on the cross-complaint that its negligence was "active" negligence, no triable issues of fact remained and the question of whether Combustion was entitled to indemnification by Dudick presented only questions of law. Accordingly, the court tried Combustion's cross-complaint against Dudick as a matter of law, rejecting Combustion's counsel's repeated assertions that there remained one or more unspecified triable issues of fact.

As the matter developed at trial, the question of Dudick's obligation to indemnify Combustion was broken into two parts: (1) the obligation for indemnity with respect to Combustion's tort liability to plaintiff Miranda; and (2) the obligation to indemnify Combustion with respect to its contractually incurred liability to indemnify Parsons. With respect to the latter, the court determined Dudick had no obligation to indemnify Combustion because the indemnity agreement or agreements between them did not cover contractual liability under indemnity contracts. As to the former the court concluded that any obligation Dudick might otherwise have to indemnify Combustion for its tort liability to plaintiff Miranda would not apply to a judgment against Combustion and in favor of Miranda in the action in chief because that judgment would only have resulted because Combustion "voluntarily" made a general appearance as a defendant in the action when it was served with summons and complaint after expiration of the statutorily permissible three-year period prescribed in former Code of Civil Procedure section 581a, subdivision (a).[5]

While we do not agree in all respects with the trial court's analysis and the reasons it articulated for reaching the result it did, we nevertheless conclude it did reach the correct result, so we shall affirm the judgment. " 'The fact that the action of the court may have been based upon an erro-

---

[5]Section 581a was repealed by Statutes 1984, chapter 1705, section 3. The substance of the three-year limitation was continued in Code of Civil Procedure section 583.210 (Stats. 1984, ch. 1705, § 5). Unlike the former provisions, section 583.210 extends the time for return of summons until 60 days after time for service. The change would make no difference in the instant case where neither service nor return of summons was effected until long after the additional 60-day period for return.

neous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

Dudick having stipulated for purposes of trial on Combustion's cross-complaint for indemnity that its negligence was "active" negligence, the court correctly concluded the remaining issues to be tried were questions of law. The indemnity agreement or agreements asserted by Combustion were embodied in written instruments, and the interpretation of written instruments in the absence of conflicting extrinsic evidence presents a question of law. (See *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) In addition, the procedural facts concerning Combustion's general appearance as a defendant in the action were undisputed; it was only the legal effect of those facts that was in issue. The legal effect of undisputed facts also presents a question of law.

During the course of the trial the court repeatedly invited counsel for Combustion to identify any existing issues of fact or to make an offer of proof with respect to any evidence Combustion wished to present. With the exception of counsel's indicating a letter existed that would show that the designation "Owner" in the subcontract agreement form accompanying Combustion's letter of intent was understood by the parties to refer to Parsons, no offer of proof was made, nor was any evidence or issue of fact identified. We perceive none and in any event our disposition turns entirely upon an interpretation of the documentary evidence which, as already pointed out, is a judicial function.

Combustion was first served in the action as a cross-defendant on Parsons' complaint for indemnity. It was not served as a defendant in the main action until about July 15, 1981, after plaintiff's attorney discovered it had not previously been named a defendant and served. The action had been filed January 31, 1978, more than three years before Combustion was served as a defendant, so Dudick urged and the court determined that Dudick should not be held liable to indemnify Combustion for its direct tort liability to plaintiff Miranda because any direct liability on Combustion's part would

have been barred by the provisions of Code of Civil Procedure former section 581a, subdivision (a).[6]

We are unable to agree with the trial court that indemnity of Combustion by Dudick, if otherwise required, was foreclosed by Combustion's waiver of the defense that might have been provided by the provisions of former Code of Civil Procedure section 581a, subdivision (a), after the three-year period had expired. Combustion had presented a motion designated a motion for summary judgment but treated by the court as a motion to dismiss pursuant to Code of Civil Procedure section 581a, subdivision (a). The motion was denied by the court, however, on the ground Combustion was estopped to assert its nonappearance in the main action because in its pleadings and conduct in pursuit of discovery before the running of the three-year period it had led the plaintiff to believe that it had in fact appeared as a defendant in the action. That ruling was eminently sound, and the denial of indemnity on an essentially contrary determination (i.e., waiver of the defense *after* the three-year period had run) was improvident.

Among other things, in the first cause of action of its first amended cross-complaint, which was filed long before the expiration of the three-year period specified in former Code of Civil Procedure section 581a, subdivision (a), Combustion had alleged: "Cross-complainant, COMBUSTION EQUIPMENT ASSOCIATES, INC., denies the allegations of plaintiff's complaint and contends further that if cross-complainant is liable to the plaintiff in respect to his injuries as alleged in his complaint, that the liability would be based upon cross-defendants' negligence or the negligence of cross-defendants' subcontractors." The prayer of Combustion's first amended cross-complaint requested inter alia that if the plaintiff should recover judgment against Combustion, Combustion should recover judgment in a like amount against Dudick by way of indemnity.

The record makes it perfectly clear that Combustion, and indeed all parties, were proceeding as if Combustion were a party to the main action and it either generally appeared or was estopped to deny it did so, long before the three-year period expired.

---

[6]That subdivision provided: "No action heretofore or hereafter commenced by complaint shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, unless the summons on the complaint is served and return made within three years after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a general appearance in the action."

Nevertheless, the determination that Dudick was not obliged to indemnify Combustion was correct. Properly viewed and interpreted, Dudick's agreement to indemnify Combustion was even narrower than the trial court determined—it covered only loss or liability caused solely by its own acts or conduct. So it covered neither Combustion's tort liability to the plaintiff, which resulted from the concurrent negligence of Parsons, Combustion, Dudick and the plaintiff, nor Combustion's contractual indemnity liability to Parsons.

■ We can agree with Combustion that the indemnity provision contained in its form subcontract agreement accompanying the letter of intent was a general indemnity agreement and would have supported recovery by it from Dudick of indemnity for Combustion's tort liability since Combustion's negligence had been found to be "passive" whereas Dudick's negligence was stipulated to be "active." (See, e.g., *Rossmoor, supra,* 13 Cal.3d 622, 628; *Markley* v. *Beagle, supra,* 66 Cal.2d 951, 961-962.) We might even agree with Combustion's somewhat doubtful argument that the indemnity provision in the form subcontract agreement should be interpreted to include Combustion's contractual indemnity liability to Parsons. Combustion would still not be entitled to recover, however, because the indemnity agreement between Combustion and Dudick embodied in the letter of intent and form subcontract agreement was superseded by the more limited indemnity provision contained in paragraph 8 of the purchase order by virtue of paragraph 16 of the purchase order.

■ The indemnity provision in paragraph 8 of the purchase order narrowly obligated Dudick to indemnify Combustion only for liability resulting "by reason of any act or neglect on the part of [Dudick] or its subcontractors, or the employees, representatives, agents or invitees of [Dudick] or its subcontractors . . . ." That is its precise language, and, in the absence of a showing to the contrary, such an indemnity provision does not give rise to a duty on the part of the indemnitor to indemnify against loss or liability caused other than by its own act or neglect or that of its representatives. (See *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 420-421 [105 Cal.Rptr. 725]; see also *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 507 [146 Cal.Rptr. 614, 579 P.2d 505].) If an indemnitor is to be made responsible for the negligent acts of an indemnitee or others over whose conduct it has no control, the language imposing such responsibility should do so expressly and unequivocally so that the contracting party is advised in definite terms of the liability to which it is exposed. (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 416; *MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d 413; 420.)

Here, of course, plaintiff's injury and damages resulted not from the sole negligence of Dudick or its representatives but from the concurrent negligence of Parsons, Combustion, Dudick and the plaintiff, and Dudick was not liable to indemnify Combustion for liability resulting in part from Combustion's negligence or that of Parsons. A fortiori no obligation to indemnify for contractual indemnity liability based on the concurrent negligence of multiple parties results from such a provision. ■■■ When the obligation for indemnity for acts other than the indemnitor's are found in a printed form contract prepared or supplied by the indemnitee, the language imposing the obligation must be clear and express. (*Goldman* v. *Ecco-Phoenix Elec. Corp.*, *supra*, 62 Cal.2d 40, 44, 48; see also *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, *supra*, 52 Cal.2d 411, 416-417.)

We are aware and have taken note of the view expressed in *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 674 [151 Cal.Rptr. 399], that the classifications developed in *MacDonald & Kruse,* including the third classification of which the indemnity provision in the purchase order is an example, are "no longer tenable in light of *Rossmoor.*" (Also cf. *Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237 [132 Cal.Rptr. 86].) We agree that *Rossmoor* constituted a return to the first principles that had been enunciated in the *Goldman, Vinnell* and *Harvey Mach. Co.*[7] cases and represented a repudiation of decision making on the basis of fixed and immutable classifications. However, the court in *Rossmoor* did not reject or disapprove the contractual interpretation or other reasoning underlying the *MacDonald & Kruse* classifications, and that interpretation and reasoning remain viable. Notably, in *E. L. White, Inc.* v. *City of Huntington Beach, supra,* 21 Cal.3d 497, 507, the California Supreme Court, citing *MacDonald & Kruse,* stated: "Even an indemnitee who has been only *passively* negligent may be precluded from indemnification if the contractual provision agreed upon provides indemnity only for liabilities resulting from acts of the indemnitor and not from those of others." (Italics in original.)

■■■ There remains to be discussed our conclusion that the general indemnity provision embodied in the form subcontract agreement accompanying the letter of intent was superseded by the more limited indemnity agreement found in the purchase order. We explain.

Paragraph 16 on the reverse of the purchase order in language chosen by and on a form supplied by Combustion provides that Dudick's acceptance of the purchase order "supersedes all prior agreements, and constitutes the

---

[7]*Harvey Mach. Co.* v. *Hatzel & Buehler, Inc., supra,* 54 Cal.2d 445.

entire contract" between Combustion and Dudick. Thus, to the extent the indemnity provision in the purchase order was different from the indemnity provision in the form subcontract agreement accompanying the letter of intent, the provision in the purchase order superseded the provision in the earlier documents.

This conclusion is not altered by the fact the purchase order states on its face that delivery, preparation and installation of the linings is to be "in accordance with CEA letter of intent dated August 27, 1976." The delivery, preparation and installation of the linings "in accordance with CEA letter of intent dated August 27, 1976," was not in conflict with or inconsistent with the provision in paragraph 16 of the purchase order stating that the provisions of the purchase order supersede all earlier agreements. Even if it could be said that some ambiguity was created by the language on the front of the purchase order, the purchase order was prepared by and its language chosen by Combustion, and any ambiguity in this regard is appropriately resolved against it. (Civ. Code, § 1649; *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 20 [92 Cal.Rptr. 704, 480 P.2d 320]; *Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 810 [189 Cal.Rptr. 775].) Moreover, indemnity agreements must be clear and explicit and in resolving ambiguities they are construed against the indemnitee. (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, 44; *Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 416-417; see also *Rossmoor, supra,* 13 Cal.3d 622, 631-632; *Guy F. Atkinson Co.* v. *Schatz, supra,* 102 Cal.App.3d 351, 357.)

Having concluded that the effective indemnity agreement between Dudick and Combustion obligated Dudick to indemnify Combustion only against liability or loss resulting from its own acts or neglect or that of its representatives, we shall affirm the judgment of the trial court in favor of Dudick and against Combustion.

### *Disposition*

For the reasons stated, the judgments on the cross-complaints for indemnity are, and each of them is, affirmed.

Morris, P. J., and Rickles, J., concurred.