# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3160

ADVANCED GROUND SYSTEMS ENGINEERING, INC.,

*Plaintiff-Appellee*,

v.

RTW INDUSTRIES, INC., D/B/A INDIANA BRIDGE DIVISION,

*Defendant-Third Party Plaintiff-Appellant*,

v.

RAVI R. TALWAR,

*Third Party Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 00-0076-C-M/S—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED FEBRUARY 10, 2004—DECIDED OCTOBER 28, 2004

———————

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* When a work platform under construction for the Indianapolis Airport Authority (IAA) partially collapsed on May 13, 1999, the inevitable search for compensation began. United Airlines, the facility manager for IAA, served notice of a claim to Advanced Ground Systems Engineering ("Engineering"), the principal contractor for

the project, alleging that faulty welds caused the collapse. Engineering in turn tendered its defense of the claim to RTW Industries, Inc., the subcontractor responsible for the welding work. RTW rejected the tender, and this litigation followed. It was interrupted, however, by arbitration between Engineering and United, as called for in the contract between Engineering and IAA; RTW was not a party to the arbitration.

The present appeal deals with matters remaining after the completion of the arbitration. The arbitrator ruled in favor of United, awarding it $661,152. RTW, still in the lawsuit, then added a third-party complaint against Ravi Talwar, the founder and former president, CEO and sole shareholder of RTW. Talwar had sold his RTW shares in 1996 to another entity, but RTW asserted that Talwar had a duty to indemnify RTW under the stock purchase agreement. The district court resolved the claims as follows: (1) it confirmed the arbitral award in favor of United and against Engineering; (2) it granted summary judgment for Engineering in its claim against RTW, finding that RTW owed Engineering a duty to defend and indemnify it; (3) it granted Engineering's motion for costs and attorneys' fees; and (4) it granted Talwar's motion for summary judgment, finding that he had no duty to indemnify or defend RTW. RTW now appeals. We affirm the judgment of the district court.


# I

Engineering, a California corporation with its principal place of business in that state, and IAA concluded their original contract on December 18, 1992. Under the contract, Engineering undertook to fabricate and construct a horizontal tail section work platform, which was to be used in performing work on Boeing 737 aircraft at an IAA maintenance center. In 1993, Engineering entered into an agreement with RTW (which was an Indiana corporation doing business as

Indiana Bridge Division; we refer to it as RTW, to avoid confusion with a later Illinois corporation also named Indiana Bridge). In that agreement, RTW agreed to provide all material and labor to fabricate, blast clean, and shop paint the assemblies in accordance with Engineering's specifications.

As noted above, on May 19, 1999, there was a partial collapse of the work platform. United, IAA, and Engineering alleged that RTW's welding work was responsible for the accident, because the welds were of insufficient depth and bonding. After the notices of claim and tenders of defenses took place, Engineering filed this case, requesting a declaration obliging RTW to defend and indemnify Engineering with respect to any claims brought by IAA (or United, standing in IAA's shoes). Engineering also sought a declaration of the rights and duties it and United had that arose out of the contract between Engineering and IAA. The district court ruled in favor of Engineering on the first claim; the second no longer concerns us. The court stated that it understood Engineering to be seeking a declaration that RTW had a duty both to defend and to indemnify it with respect to the United claims that went to arbitration and on which United recovered $661,152. Applying California law, the court concluded that the clause in which RTW promised to indemnify Engineering also included a duty to defend. On appeal, RTW claims that this was an error, as was the court's related decision to award attorneys' fees to Engineering. In a later order, the district court also ruled that Talwar had no duty to indemnify RTW pursuant to a 1997 stock purchase agreement, under which he sold all of his shares in RTW to Indiana Bridge, Inc. (the Illinois corporation, to which we refer as IBI), nor did he have a common law duty to indemnify RTW. This ruling is the target of the other part of RTW's appeal.

## II

We begin with the question whether the district court correctly granted summary judgment in favor of Engineering on the question of RTW's duty to defend and indemnify it. The logical starting point is the contractual language in the agreement between Engineering and RTW on which this duty hinges, which we set forth here:

(7) Supplier warrants:

(A) that goods and services covered by this Purchase Order will conform to the specifications, design, drawing, samples and other descriptions referred to it in the Purchase Order,

(B) that such goods will be free from defects in material and workmanship, potent [*sic*] or latent, and such services will be of workmanlike quality,

(C) that such goods will be fit and sufficient for the ordinary purposes of such goods and services, and for such specific purposes which Purchaser informs Supplier the goods and services are intended.

These warranties shall run to Purchaser, its customers and subpurchasers.

(8) Supplier shall also indemnify and hold harmless Purchaser from and against any and all liabilities, judgments and damages suffered because of Supplier's non-compliance with any of the warranties in paragraph (7) hereinabove, which are paid or payable by Purchaser upon claim or cause of action of any kind asserted by any part, including without limitation Purchaser's employees, Purchaser's customers, and subpurchasers therefrom, and Supplier's agents and employees, and Supplier shall reimburse expenses of Purchaser incidental to such claim or cause of action.

In paragraph 11 of the agreement, the parties agreed that California law would apply to the contract.

It is clear that this contract imposed a duty on RTW to indemnify Engineering; the district court noted that RTW did not contest this point. The dispute here is whether it also imposes the separate duty to defend. As to this, RTW argues that the final sentence of clause (8) plainly shows that no such duty existed. Instead, the parties expected that RTW would have to *reimburse* Engineering for expenses "incidental" to any covered claim. The district court acknowledged that this was a reasonable reading of that sentence, but it concluded that it was a reading at odds with California law.

The provision of California law that the district court had in mind was Cal. Civ. Code § 2778, which is titled "Rules for Interpreting Agreement of Indemnity." It provides in relevant part as follows:

> In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:
>
> * * *
>
> (4) The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so;
>
> (5) If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former; . . . .

Cal. Civ. Code § 2778(4), (5). The district court read this language—particularly that in § 2778(4)—to mean that a contract containing a duty to indemnify should be interpreted as including a duty to defend, unless the parties have expressly excluded such a duty in their agreement. It

then found that the promise to pay "incidental" expenses in the Engineering/RTW agreement was not specific enough to negate a duty to defend.

There is a paucity of California law directly on point; most of the cases construing this aspect of § 2778 appear to come from the federal district courts in that state. (Perhaps this is a price of the apparent preference on the part of insurance companies for litigating in federal court, when diversity of citizenship is present.) Not surprisingly, California recognizes the distinction between the duty to indemnify and the duty to defend. See *Certain Underwriters at Lloyd's of London v. Superior Court*, 16 P.3d 94, 101-02 (Cal. 2001). It describes the two duties as "correlative," *id.* at 101, and like other courts, it considers the duty to defend as "perforce" broader than the duty to indemnify. *Id.* at 102. But the question in the 2001 *Lloyd*'s case was quite different from the one now before us: there, the court had to decide whether these duties were limited to civil actions in court, or if they extended to proceedings before environmental agencies.

One federal district court observed that "[a]n insurer may assume a duty to reimburse for defense costs without assuming a duty to defend." *Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 603 (N.D. Cal. 1994). But it then held only that an obligation to reimburse is not "determinative" of an obligation to defend. *Id.* In itself, that statement seems reasonable. An obligation to reimburse might be some evidence of an obligation to defend, or it might be some evidence that the parties intended to impose an obligation to reimburse in lieu of an obligation to defend. In short, the obligation to reimburse standing alone is ambiguous. It accordingly cannot serve, without more, as proof that the parties intended to exclude the operation of § 2778(4). Here, there is nothing else that would demonstrate an intent to deviate from the statute. We thus agree with the district court that RTW had an obligation not only to indemnify Engineering, but also to defend it with respect to

matters within the scope of the indemnification agreement upon Engineering's tender of the matter, in accordance with § 2778(4).

But the district court did not take a close look at what matters fell within the scope of the indemnification agreement, and it is that point on which RTW is now focusing. RTW argues that the contract calls for indemnification only for non-compliance with the warranties found in paragraph 7 of the agreement. This means, in its view, that proof of non-compliance is a prerequisite not only for finding a duty to indemnify, but also for finding a duty to defend (or for that matter the duty to reimburse the expenses of the arbitration). Thus, it concludes, the district court could not resolve this dispute on summary judgment, because there are disputed issues of fact with respect to RTW's compliance with the warranties.

But the same could be said of countless contractual obligations to indemnify someone. The California Supreme Court long has held that the ultimate duty to indemnify does not arise unless the indemnitee has been found liable to the principal plaintiff, as Engineering was found liable to United. See, *e.g.*, *McBeth v. McIntyre*, 57 Cal. 49 (1880); *Eva v. Andersen*, 137 P. 16 (1913). Only then, from the standpoint of indemnity, does Engineering need to recoup money from the indemnitor, here RTW. The ground of the indemnitee's liability might be a doctrine like *respondeat superior*; it might flow from contractual warranties of a certain quality of performance or product; or it might be the indemnitee's own negligence. In the last situation, it is true, many courts including those in California hold that "an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97, 100 (Cal. 1975). But there is nothing here to show on what ground the arbitrator ruled against Engineering. Thus, the

doctrine requiring an explicit indication that an indemnification clause covers the indemnitee's own negligence might not even be applicable to this case.

There is another reason, even more powerful, to reject RTW's argument. It is common for the scope of an obligation to indemnify to be contested. In that situation, however, an indemnitor faces a choice: either defend under a reservation of rights, or stay out of the lawsuit and gamble that its interpretation of the scope of the indemnity clause will ultimately prevail. If the indemnitor loses that gamble, it will be liable not only for the defense costs, but also for the full amount that the indemnitee must pay, and it will have had no say in the litigation process. See *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges*, 476 P.2d 406, 414 (Cal. 1970) (noting in the context of insurance, the insurer/indemnitor "could stand by and assume the risk that the loss to the assureds might exceed the deductible amount, in which event they would become obligated not only to pay the assureds the excess loss but also all expenses and costs including attorney fees.").

Naturally, an indemnitor risks little if it is obvious that a particular indemnification clause does not cover the risk that has been tendered to it. But that is not this case. Engineering introduced evidence that the welds failed, and the contract between Engineering and RTW was before the court. It is entirely possible that the reason the welds failed was because they were defective in either material or workmanship, and thus that the problem fell squarely within the scope of the indemnity clause. It is also conceivable that the welds failed because Engineering was negligent in some respect, perhaps by failing to tender proper specifications or by failure to inspect or supervise. But the fact that RTW may ultimately have had a defense to the duty to indemnify does not mean that it could refuse to defend the case when it was informed about it.

At this point, it is too late for RTW to make these arguments. It is here that § 2778(5) comes into play. Engineering asked RTW to defend it, and RTW refused to do so. Under those circumstances, the statute says that "a recovery against the latter [here, Engineering] suffered by him in good faith, is conclusive in his favor against the former." We read this to mean that as long as Engineering litigated (or here, arbitrated) the case against United (and IAA) in good faith—and there is no evidence at all to the contrary— RTW can no longer dispute either the amount of the award or the question whether the underlying liability might fall outside the scope of the indemnity clause. We note in this connection that while RTW was not a party to the arbitration, if it had accepted Engineering's tender of its defense, then RTW would have been able to ensure that Engineering was not taking any position detrimental to RTW's interests. If such a conflict had arisen, it would have been easy enough to arrange for separate representation of each party.

## III

Finally, we turn to Ravi Talwar's part of this case. Talwar formed RTW Industries in 1987. Until 1996, he was its president, its CEO, and its sole shareholder. In that year, he was contacted by Robert Smith, who was interested in buying RTW's assets. Smith and Talwar negotiated the terms of the purchase over several months, including the terms of the Stock Purchase Agreement ("the Agreement"). As part of his preparations for the transfer, Smith incorporated a new Illinois entity, "Indiana Bridge, Inc." or IBI, to purchase RTW. On August 19, 1997, Smith and Talwar closed the deal, signing the Agreement and other documents.

The parties to the Agreement were Talwar, as Seller, and IBI, as Purchaser; it refers throughout to the "Company," which article 11.D. of the Agreement defined as "RTW Industries, Inc., an Indiana corporation." It also refers to

the "Purchaser Group," which article 11.AA defined as "collectively Purchaser and its officers, directors, shareholders, employees, agents, accountants, attorneys, legal representatives, successors and assigns." The Company itself, however, is not what was transferred; as the name of the Agreement suggests, it was the "[s]hares, free and clear of any and all [l]iens" that IBI acquired. The Agreement contains a number of representations and warranties, but the article of principal interest here is article 8, which addresses indemnification. Article 8 reads, in relevant part, as follows:

> A. Seller shall defend, indemnify and hold the Purchaser Group harmless of, from and against any and all Claims incurred or sustained by the Purchaser Group or the Company, or any of them, arising from or relating to:
>
> * * *
>
> (2) the operation of the Business by the Company prior to the date of this Agreement.
>
> * * *

Finally, the Agreement specifically addresses the subject of third-party beneficiaries in article 12.C:

> C. This Agreement will be binding upon, inure to the benefit of and will be enforceable by Seller and Purchaser and their respective heirs, if applicable, legal representatives, successors and permitted assigns, if any, and no other person or entity will be deemed a third-party beneficiary of this Agreement.

RTW is not a party to the agreement, as it is neither the Purchaser nor the Seller. Moreover, the language of article 12.C bluntly says that no one will be deemed to be a third-party beneficiary. Notwithstanding these hurdles, RTW argues that it is nevertheless a third-party beneficiary, because under Indiana law (which governed the Agreement, as stated in article 12.A) one who is not a party to a contract may enforce it directly if she can demonstrate that she

is a third-party beneficiary. *Luhnow v. Horn*, 760 N.E. 2d 621, 628 (Ind. Ct. App. 2001). To show third-party beneficiary status, one must show (1) a clear intent by the actual parties to the contract to benefit the third party, (2) a duty imposed on one of the contracting parties in favor of the third party, and (3) the necessity of performance of the terms of the contract in order to render a direct benefit to that third party. *Id.*

While this is a correct statement of Indiana law, it is not complete. Indiana courts also recognize that the general third-party beneficiary rule is a default rule, which can be altered by express agreement of the parties. Thus, in *Indiana Gaming Co. v. Blevins*, 724 N.E.2d 274 (Ind. Ct. App. 2000), the court had before it a contract containing a provision expressly stating that nothing was to be construed as creating any third-party beneficiaries, using language very much like that in the Agreement between Talwar and IBI. After noting that contracts must be read as a whole and that every provision should be given meaning if at all possible, the court found that the provision excluding third-party beneficiaries was enforceable. *Id.* at 278-79. This was enough to defeat the claims of the parties before it.

*Blevins* is directly applicable to this case. RTW the company was closely connected to the Agreement, but it was not a party. Article 12.C explicitly defines who gets the benefits (and the duties) of the Agreement and who does not. RTW could only be a third-party beneficiary, and article 12.C operates to defeat the background rules for such parties in Indiana.

## IV

In summary, we conclude that the Engineering/RTW agreement imposed a duty on RTW to indemnify Engineering for actions arguably in breach of the warranties contained in that agreement, and that the claim Engineering tendered to RTW fell within the potential scope of that indemnity

clause. Consequently, under California law, RTW also had a duty to defend Engineering. Because it took no timely action, either in the form of a reservation of rights or another action to explore the scope of the indemnity obligation, RTW must now live with the consequences of its decisions. In addition, we conclude that RTW may not assert any rights arising out of the Stock Purchase Agreement between Talwar and IBI. For these reasons, we AFFIRM the judgment of the district court.


A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*