Filed 10/3/13  Verizon California v. Charter Communications CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VERIZON CALIFORNIA, INC., | B239204 |
| Cross-Complainant and Respondent, | (Los Angeles County Super. Ct. No. SC089928) |
| v. | |
| CHARTER COMMUNICATIONS, INC., | |
| Cross-Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Linda K. Lefkowitz, Judge.  Affirmed.

Grant, Genovese & Baratta and Lance D. Orloff and Christopher Dunakin for Cross-Defendant and Appellant.

Cole Pedroza, Joshua C. Traver, Kenneth R. Pedroza; Randolph M. Even & Associates and Scott R. Diamond for Cross-Complainant and Respondent.

_____

An installer of equipment for Charter Communications, Inc. ("Charter") was injured when the pole he was working on broke and he fell to the ground. The injured party sued Verizon California, Inc. ("Verizon") because, although Charter was leasing the pole, it was owned by Verizon. Verizon settled the lawsuit and sought indemnification from Charter.

The trial court ruled Verizon was entitled to indemnification because Verizon was at most passively negligent. Charter has appealed the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The predecessors in interest of Charter and Verizon entered into a "CATV Pole Lease Agreement" in 1987 (the Lease Agreement), pursuant to which Charter was permitted to use Verizon's utility poles to provide cable television service to its subscribers. Charter contracted with Creative Communications to install Charter's equipment on utility poles subject to the Lease Agreement. Creative Communications' employee, Jose Romero, was injured when the base of one such utility pole snapped, causing Romero to fall to the ground.

Romero sued Verizon for negligence; Verizon cross-complained against Charter for equitable indemnity, comparative indemnity, express indemnity, declaratory relief, equitable apportionment of fault and contribution.[1]

Romero's negligence action settled for a total payment to him of $699,000. Verizon paid $600,000 towards the settlement; Charter paid $99,000. The parties acknowledged the settlement did not waive any rights between them in connection with their cross-complaints.

---

[1] Charter cross-complained against Creative Communications and Verizon for indemnity, apportionment and contribution, and declaratory relief; those claims are not before us on this appeal.

2

Verizon prosecuted its cross-complaint solely on its contractual indemnity rights under the Lease Agreement. The matter was submitted to the trial court on stipulated facts, a joint request for judicial notice, and trial briefs. The court ruled Verizon's negligence, if any, "must be deemed as passive" and therefore, Verizon was entitled to indemnification of the sums paid to Romero in settlement of his lawsuit as well as its reasonable costs of litigation in defense of that claim. The court entered judgment against Charter in the amount of $830,717.20.

Contemporaneously with the filing of its notice of appeal, Charter paid the outstanding judgment in full, expressly advising Verizon that, by reason of its satisfaction of the judgment, it did not intend to, and did not, waive its right to appeal.

VERIZON'S REQUEST TO DISMISS APPEAL

Although it did not file a motion to dismiss, Verizon invites this court to dismiss the appeal because Charter voluntarily complied with the terms of the judgment. We decline the invitation.

Verizon cites *Reitano v. Yankwich* (1951) 38 Cal.2d 1and *A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank* (1986) 182 Cal.App.3d 356, in support of its contention that Charter's payment of the judgment constituted a waiver of its appellate rights and that no exception "to the waiver rule, such as when the judgment was paid under 'execution or other coercion,'" are applicable to the circumstances of this case. In so doing, Verizon misstates the waiver rule.

"In the case of voluntary satisfaction of a judgment, deprivation of the right to appeal ensues only when it is shown that the payment of the judgment was by way of compromise or with an agreement not to take or prosecute an appeal." (*Estate of Merrill* (1946) 29 Cal.2d 520, 524; accord, *Reitano v. Yankwich, supra,* 38 Cal.2d at p. 4 ["though execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of his right to

3

appeal, unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination"].) The burden "is on [respondents] to demonstrate that [appellants] entered into some type of compromise agreement with [respondents] which was intended to terminate this litigation pending the appeal." (*Coldwell Banker & Co. v. Department of Insurance* (1980) 102 Cal.App.3d 381, 401.) Verizon makes no showing the parties entered into a compromise agreement intended to terminate the litigation without an appeal. To the contrary, Verizon acknowledges Charter paid the full amount of the judgment while expressly reserving its appellate rights.

## STANDARD OF REVIEW

The trial court interpreted the legal effect of the parties' contractual indemnity provision on stipulated facts. Our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

## DISCUSSION

The sole issue on appeal is whether, under the indemnity clause of the Lease Agreement, Charter was required to indemnify Verizon for the $600,000 Verizon paid Romero in settlement of his negligence suit against Verizon.[2] We begin with the law of contractual indemnity.

"Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.] This obligation may be expressly provided for by contract [citation], it may be implied from a contract not specifically mentioning indemnity [citation], or it may arise from the equities of particular

---

[2] Charter does not appeal the award of Verizon's litigation costs defending the Romero lawsuit.

4

circumstances [citations]. Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. [Citation.]" (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628 (*Rossmoor*).)

"[A]n indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. [Citation.] If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. [Citations.] While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. [Citations.] [¶] Provisions purporting to hold an owner harmless 'in any suit at law' [citation], 'from all claims for damages to persons' [citation], and 'from any cause whatsoever' [citation], without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." (*Rossmoor, supra,* 13 Cal.3d at pp. 628-629; see also *McCrary Const. Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1536.)

"Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.]" (*Rossmoor, supra,* 13 Cal.3d at p. 629.) "Passive negligence has been found or assumed from the failure to discover a defective condition created by others [citation], failure to exercise a right to inspect certain work and specify changes [citation], and failure to exercise a supervisory right to order removal of defective material [citation]." (*Id.* at p. 630.) "Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. [Citations.] 'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity

5

in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law.' [Citation.]" (*Rossmoor, supra,* 13 Cal.3d at p. 629.) "Active negligence has been found in digging a hole which later caused an injury [citation], knowingly supplying a scaffold which did not meet the requirements of a safety order [citation], creating a perilous condition that resulted in an explosion [citation], and failing to install safety nets in violation of a contract [citation]." (*Id.* at p. 630.)

Paragraph 35 of the Lease Agreement, titled "Indemnity and Insurance," states in pertinent part as follows: "Licensee [Charter] shall indemnify and hold harmless Licensor [Verizon] and all other joint users and their respective successors and assigns, against and from any and all loss, claims, demands, causes of action, damages, risks or liabilities, in law or in equity, of every kind and nature whatsoever, directly or proximately resulting from or caused by but not limited to: [¶] (a) the installation, maintenance or use of said equipment on said poles, . . . [¶] and Licensee shall, upon demand and at its own sole risk and expense, defend any and all suits, actions or other legal proceedings which may be brought or instituted by third persons against Licensor and/or other joint user[s] or their respective successors or assigns, on any such claim, demand or cause of action; and shall pay and satisfy any judgment or decree which may be rendered against Licensor and/or other joint user or their respective successors or assigns, in any such suit, action or other legal proceeding; and further, Licensee shall reimburse Licensor and each other joint user for any and all legal expense incurred in connection therewith, including attorney's fees."

Because the foregoing indemnity clause does not expressly state that Verizon's indemnity rights extend to its own negligence, the provision is a "general indemnity" clause as the term is used in *Rossmoor*, and the parties so stipulated at trial. Thus, under the legal analysis of *Rossmoor*, the Lease Agreement requires Charter to indemnify Verizon only if Verizon's negligence was passive as opposed to active. Not surprisingly, the parties viewed Verizon's alleged negligence differently: Charter described Verizon's negligence as active based on Verizon's duty to maintain its utility pole in a reasonably

6

safe condition, while Verizon maintained its negligence, if any, was passive, since it was not present at the time Romero was injured and thus played no active part in the events which led to the accident.  The trial court adopted Verizon's view:  "Verizon was neither present, nor required to be present at the time or scene of the accident, and thus cannot be deemed to have actual and direct responsibility for insuring safety at the time of the injury.  This is a factor which has distinguished 'passive' from 'active' negligence in the case law . . . .  The court does not find that Verizon's action or inaction in failing to inspect the pole defeats the broad immunity contracted for . . . ."

The trial court was correct.  Verizon's conduct vis-à-vis Romero's accident was "passive."  Verizon's alleged failure to properly maintain the utility pole amounted to simple nonfeasance, similar to those acts of nonfeasance specifically categorized as passive negligence, i.e., "the failure to discover a defective condition created by others [citation], failure to exercise a right to inspect certain work and specify changes [citation], and failure to exercise a supervisory right to order removal of defective material [citation]."  (*Rossmoor, supra*, 13 Cal.3d at p. 630.)  The "failure . . . to perform a duty imposed by law" is passive, not active, negligence.  (*Rossmoor, supra,* 13 Cal.3d at p. 629.)

Charter contends the Lease Agreement imposed an affirmative duty on Verizon "to provide Romero with a utility pole free of unreasonably dangerous termite-ridden decay . . . ."  If, as Charter asserts, Verizon breached an express duty to Charter to maintain the pole in a safe condition, *Rossmoor* would support Charter's argument that Verizon's breach of duty constituted active negligence.  (*Rossmoor, supra,* 13 Cal.3d at p. 629 ["Active negligence . . .  is found if an indemnitee . . . has failed to perform a precise duty which the indemnitee had agreed to perform."].)  However, we do not read the agreement to impose such a duty on Verizon.

Paragraph 20 of the Lease Agreement states:  "[Verizon] reserves to itself . . . the right to maintain its poles and to operate its facilities thereon in such manner as will best enable it to fulfill its public service requirements.  [Verizon] . . . shall not be liable to [Charter] for any interruption to the service of [Charter] or for interference with the

7

operation of the equipment of [Charter] arising in any manner whatsoever." Charter insists that by this language Verizon agreed to undertake the duty, for Charter's benefit, to maintain the pole in a condition such that Romero would not be injured when he ascended the pole.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644; see generally *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822.)

The Lease Agreement reveals no intention of the parties to impose upon Verizon any duty to maintain the utility poles in a safe condition for the benefit of Charter. To the contrary, the agreement makes clear that Verizon's grant of permission to Charter to use its utility poles is given with the express understanding that Charter's use of the poles will not cause Verizon to incur any inconvenience, expense or other burden. Charter asks us to construe the words "reserves . . . the right" as set forth in the lease to mean Verizon was assuming an obligation. To do so, however, would conflict with the most basic principles of contract interpretation.

8

DISPOSITION


The judgment is affirmed.  Verizon shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




KUMAR, J.[*]


We concur:



TURNER, P. J.



KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.